Gladys **CHILDRESS** et vir, Appellants,

v.

J. K. **MARTENS**, d/b/a Captain's Retreat Motel, Appellee.

No. 15445.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 26, 1969.

Rehearing Denied Sept. 11, 1969.

Brock & Williams, Walter W. Williams, Houston, for appellants.

McLeod, Alexander, Powel & Apffel, E. A. Apffel, Jr., Galveston, for appellee.

BELL, Chief Justice.

The appellants sued appellee to recover damages resulting from injuries received by Mrs. Childress, hereinafter called appellant, when an iron pipe on premises operated by appellee fell on appellant. Trial was to a jury and based on the jury verdict, which failed to find appellee guilty of any act of negligence which was a proximate cause of any injury and found the injuries were the result of an unavoidable accident, the court rendered judgment that appellants take nothing.

In answer to the following numbered issues the jury found as follows:

1. That appellant was a licensee on the premises.

3. That a post supporting the awning under which appellant was sitting fell and struck her.

4. That appellee failed to properly secure the supporting post.

5. Such failure was not found to be negligence.

7. That appellee and his employees failed to warn appellant that the post was improperly secured.

8. Such failure was not found to be negligence.

10. The jury failed to find that appellant leaned on the post.

13. That appellant had been warned to stay clear of the supporting posts.

14. That after such warning appellant failed to stay clear of the posts.

15. That such failure was negligence.

16. The jury failed to find that such failure was a proximate cause of appellant's injuries.

17. That appellant failed to keep a proper lookout for her own safety.

18. The jury failed to find that this was a proximate cause of appellant's injuries.

19. That the support post complained of was a condition of danger.

20. The jury failed to find that appellant had knowledge of the dangerous condition.

23. The accident was an unavoidable one.

24. General damages to date of trial were found to be $100.00.

25. There would be no future medical expense.

For reversal appellants, by separate points of error, assert that the trial court erred in not granting their motion for new trial for the following reasons:

1. There was no evidence to support the jury's answers to Special Issues Nos. 1, 5, 8, 23, 24 and 25.

2. There was insufficient evidence to support the jury's answers to the issues specified immediately above in paragraph 1, and such answers were so against the weight and preponderance of the evidence as to be manifestly unjust and unfair.

3. It was error to submit Issues Nos. 1 and 23, because there was no evidence to support their submission, and such submission placed an undue burden of persuasion upon appellants and probably resulted in the rendition of an improper verdict.

4. It was error to submit Issues 1 and 23, because there was insufficient evidence to support their submission, and such submission was so against the great weight and preponderance of the evidence that it placed on appellants an undue burden of persuasion and probably resulted in the rendition of an improper verdict.

The appellee operates the Captain's Retreat Motel in San Leon. Across the highway from the motel is a swimming pool operated by appellee. The customers using the motel are entitled to make use of the pool without charge. Any other person may make use of the pool upon the payment of a charge. Children under thirteen were charged 50 cents and adults were charged 75 cents. There was a fence around the pool area. Between the pool itself and the fence was an area where persons who were not swimming would stay. There were some chairs in which a few of the people could sit. Only persons who came to swim were admitted except some parents who might come with their children. If the children were under 6 years of age the parents were required to pay and to swim with their children. There were some vending machines on the premises, one for

candy, one for cigarettes, and there was a juke box.

On the day in question the appellee was building a fibre-glass awning. It was supported by seven poles. They were made of one-inch galvanized pipe. All but two of them were in place and secured. The work of securing the other two was in progress. The one that hit appellant had been fastened to the fibre-glass by set screws. It appears, however, that the T at the top was cracked. This T was used when work on setting the pole was completed. As a base for the posts there was concrete surrounded by bricks. On the bottom of the posts was a round flange about 3½ inches in diameter. The flange had four holes. Bolts would extend through the holes and in this manner the post would be bolted at the bottom to the concrete. There were seven support poles. Five of them were bolted in place at top and bottom. Two, including the one that struck appellant, were not secured. While, as above stated, those two were attached at the top by set screws, they were not bolted at the bottom but were resting on the flange on the concrete flooring. The concrete to which the pole would be fastened at the bottom had not been poured. He was building boxes around the particular pole. The concrete base would be affixed to the concrete flooring. There were bricks that would go around the concrete base that were lying around. The frame of the awning had been put up the previous day. Before the accident the fibre-glass had been placed on the frame on the day of the accident. The two poles that had not been completely installed when the accident happened were completely installed later that day. Appellee was not present when the accident occurred. He had gone across the street to get some more building material. He was gone twelve or fifteen minutes. There were about two dozen people, including those swimming, at the pool. No one was to sit under the awning. The fifteen year old girl working there that day was supposed to warn the people not to sit under the awning.

The above was substantially the testimony of appellee.

Cathy Jackson, who had worked from time to time for appellee, was present on the day of the accident though she was not working that day. Cindy Ellison was working. Since the time of the trial she had finished high school and had moved to Houston where she was attending a beauty college. She did not testify. When Cathy first saw Mrs. Childress she was sitting in a chair under the awning. She was watching her son swim. Cindy told Mrs. Childress not to lean on the poles because they were being worked on and they didn't have the screws in to hold the arm up. Cindy asked appellant not to put her hands on the poles becaues they were loose. Appellant started toward the pool, leaned up against the pole and an arm on the upper part of the pole fell and hit her on the hand. The witness stated there were fifteen or twenty small children swimming in the shallow end of the pool. There were six or eight people scattered around the pool. Of these six or eight, four were sitting under the awning.

Appellant testified she went to the pool with her 11 year old son. This was the first time she had been there. Her son had been there before. She did not go swimming and therefore did not pay anything for herself. She paid 50 cents for her son to go swimming. She also took his friend with them. She first sat in a chair by the pool. It was in the sun. She saw some chairs under the awning and asked a girl there if she could sit in a chair in the shade. The girl said it would be all right. She sat there for awhile. She got a candy bar from the machine and ate it. While she was sitting in the chair "a little boy came by and kind of swung around on the pipe, and it fell." The pipe hit her on the left wrist, hand, leg and knee. Appellee came back from across the street and took her to the doctor. Appellant did not see the building materials there. Her testimony was uncertain as to whether the girl who told her she could sit under

the awning worked there or not. She thought she did. Appellant testified appellee had been drinking. His breath smelled like beer. Her testimony in this regard was weak. Appellee denied he had been drinking.

The effect of the jury's verdict was to acquit the appellee of any act of primary negligence, or at least it found appellants had failed to discharge their burden of establishing by a preponderance of the evidence that any act of appellee was negligence. It found appellant to be guilty of one act of negligence, but found it was not a proximate cause of the accident.

In passing on appellants' assertions of there being no evidence we have reviewed only that evidence that is favorable to the jury's answers, but in passing on the assertions that the answers are so contrary to the weight and preponderance of the evidence as to be clearly wrong we have considered all of the evidence, both that which supports them and that which militates against them. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

When the evidence and the jury's answers are analyzed it is apparent that the jury was of the view that the thing that caused the accident was the act of the "little boy" in swinging on the pole.

■ We are of the view that there was evidence of probative force to support the jury's answers to Special Issues Nos. 5 and 8. The jury could well have reasoned that appellee, as an ordinarily prudent person, would not reasonably foresee that anyone would swing on the pipe while he was gone for just a few minutes to get some more building material. Too, the pole was attached at the top to the fibre-glass by screws and while not fastened at the bottom the pole was resting flat on the concrete slab which constituted the floor. This,

the jury could reason, would normally prevent the post from falling. Too, there was building material around the post showing it had not been completely installed. This fact could be considered by the jury in determining whether appellee could, as an ordinarily prudent person, reasonably foresee that someone would tamper with the pole.

We are also of the view that the answers to Issues Nos. 5 and 8 are not so contrary to the weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

There was evidence of probative force requiring the submission of an issue on unavoidable accident. Mrs. Childress testified "a little boy" swung on the pole and it fell. She stated the boy was six, seven or eight years old, certainly not over eight. The jury could have believed he was six and was not, therefore, a responsible human agency. Haynes v. Martinez, 260 S.W.2d 369, Tex.Civ.App., ref., n. r. e.; Wichita Transit Co. v. Sanders, 214 S.W.2d 810, Tex.Civ.App., n.w.h.; Shaw v. Null, 397 S.W.2d 523, Tex.Civ.App., n.w.h.; Hodges on Special Issue Submission in Texas, Section 20, p. 57.

■ The jury's finding of unavoidable accident is not so against the weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

The appellants' having obtained no favorable findings on primary negligence and the jury's having found the accident was the result of an unavoidable accident, Issues Nos. 1, 24 and 25 became immaterial. Smith v. Whitehead, 363 S.W.2d 369, Tex. Civ.App., n.w.h.; Jones v. Blackmon, 419 S.W.2d 434, Tex.Civ.App., ref., n.r.e.; Robinson v. Crump, 422 S.W.2d 536, Tex.Civ. App., ref., n.r.e.

Affirmed.