Alfred Kent YARBOROUGH a/n/f Jeffrey
Lee Yarborough, Petitioner,

v.

James BERNER, Respondent.

No. B–2339.

Supreme Court of Texas.

April 28, 1971.

Lucas, Hudson & Friedman, G. Robert Friedman, Houston, for petitioner.

Stafford & Patten, J. W. Patten, Houston, for respondent.

POPE, Justice.

Jeffrey Lee Yarborough, a child between four and five years of age, sustained injuries when he was struck by a car driven by the defendant, James Berner. Jeffrey's father, Alfred Kent Yarborough, suing on his own behalf, recovered a judgment in the sum of $2,000 for past and future medical expenses. Mr. Yarborough also sued as next friend of Jeffrey. In this capacity he recovered judgment in the sum of $8,000 for Jeffrey's past and future physical pain and mental anguish. The court of civil appeals has reversed the judgment for medical expenses and rendered judgment that the father take nothing in this portion of the cause of action. The court has also reversed the judgment for Jeffrey's pain and mental anguish, but it remanded that portion of the cause for a new trial. Tex.Civ.App., 456 S.W.2d 753. We remand the entire cause to the trial court for a new trial.

Mr. and Mrs. Yarborough and their three children arrived at Galveston beach about mid-afternoon on June 5, 1966. They drove their car to an area where there were no other cars and parked their car about 100 feet from the waterline. Mrs. Yarborough took Jeffrey and his six-year-old sister to the water's edge, and then returned to the car to be with her husband and their infant child. It was a clear sunny day and there was nothing to obstruct the parents' view of their children on the beach. About fifteen minutes after the Yarboroughs arrived at the beach, defendant Berner drove his station wagon along a car path located between Jeffrey and his parents. Berner was followed by a car driven by James Paul Reed. Berner and Reed were driving to a place where they planned to do some seining.

Mrs. Yarborough, Berner, and Reed testified about the occurrence. Mrs. Yarborough said she looked up and saw Jeffrey coming toward the Yarborough car as Berner's car approached him. Berner's car momentarily blocked her view of Jeffrey, but she then saw that Jeffrey had been hit. Berner's car did not run over Jeffrey, but the child suffered a head injury. Reed testified that he was following Berner and was about eighty feet behind him. He said that Jeffrey was sitting close to the car path when he "jumped up and darted in front of his [Berner's] car very fast." Defendant Berner was indefinite about the time he first saw Jeffrey. He said Jeffrey was "in front of the car and right to the side of it" when he first saw him. He also testified that "he just darted out in front of me." The father did not see the accident.

The jury refused to find that Berner was driving at a speed faster than a reasonable prudent person would have driven in the exercise of ordinary care under the same or similar circumstances, or that his failure to sound his horn was negligence, or that he failed to apply his brakes, or that his failure to turn his vehicle was negligence. The jury found, however, that Berner failed to maintain a proper lookout which was a proximate cause of the collision. They also found that the Yarboroughs' failure to supervise the child was negligence but refused to find that this negligence was a proximate cause of the accident. The court of civil appeals has held that the parents' negligence in failing to properly supervise Jeffrey was a proximate cause of the accident as a matter of law. Because of the parents' contributory negligence, that court ruled that the father, individually, take nothing.

In our opinion, whether the parents' negligence proximately caused the accident was a fact issue for the jury to

determine from all the facts and circumstances. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 797 (1951); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 356 (1951). The facts and circumstances in this case show that the family was on an open beach which was almost deserted. The accident occurred about fifteen minutes after the family arrived at the beach and during that time only one other car passed along the beach up to the time of Berner's arrival. It was within the jury's province in making its determination to consider the generally isolated conditions in an area of recreation, the distance from the parents to the children, the fact that the parents had left the young child with an older sister, and all other circumstances. Motsenbocker v. Wyatt, 369 S.W.2d 319 (Tex.1963); Sciachitano v. City of Beaumont, 266 S.W. 558 (Tex.Civ.App.1924, no writ); Baker v. Dallas Hotel, 73 F.2d 825 (5th Cir. 1934); Annot. 51 A.L.R. 209, 218–229 (1927). For this reason the court of civil appeals erred in holding that the parents, as a matter of law, should have foreseen the accident.

Defendant Berner, by counterpoint, says that the trial court erred in refusing to submit issues concerning the negligence of Jeffrey. In our opinion Jeffrey was incapable of exercising those qualities of attention, perception, knowledge, experience, intelligence, and judgment which were necessary to enable him to perceive the risk and to realize its unreasonable character. See 2 Restatement of Torts 2d, Sec. 283B (1965). The common law rule that a child beneath the age of seven, as a matter of law, was incapable of negligence, was modified in Sorrentino v. McNeill, 122 S.W.2d 723 (Tex.Civ.App.1938, writ ref.). The court adopted the rule that a child would be held to that degree of care which an ordinary prudent child of the same age, experience, intelligence, and capacity would have used under the same or similar circumstances. Even under this rule, however, at some age a child is too young to be negligent as that term is used in law. Prosser says, "As the age decreases, there are fewer possibilities of negligence, until finally, at some indeterminate point, there are none at all." He places this age "somewhere in the neighborhood of four years of age." Prosser, Law of Torts, Sec. 32 (3d ed. 1964).

In *Sorrentino* the child was six years old and his contributory negligence was held to be a jury issue. In Gulf Production Co. v. Quisenberry, 128 Tex. 347, 97 S.W.2d 166 (1936) it was held that a jury question was presented as to whether a five-year-old child was too young to understand and avoid a danger in an attractive nuisance case. On the other hand, this court held in Eaton v. R. B. George Investments, 152 Tex. 523, 260 S.W.2d 587 (1953) that a child who was three years and eight months old was too young to realize the risk or danger of going about a dipping vat in which the child drowned. See also Shaw v. Null, 397 S.W.2d 523 (Tex.Civ.App.1965, no writ). In Temple Lumber Co. v. Living, 289 S.W. 746 (Tex. Civ.App.1926, writ ref.), it was suggested that a child beneath the age of five, as a matter of law, is incapable of negligence and held that a child who was four years and nine months old could not be negligent. We adhere to the guideline suggested in that case, and hold that Jeffrey, who was four years and ten months old was incapable of negligence as a matter of law. The trial court properly refused the requested issues about Jeffrey's contributory negligence.

Jeffrey's lack of capacity to be negligent, however, is the reason that defendant Berner, as held by the court of civil appeals, was entitled to his requested issue on unavoidable accident. The father, individually and as next friend of Jeffrey, says that unavoidable accident is not a proper issue in a situation in which the accident could have been prevented by either party by the exercise of common prudence citing Dallas Ry. & Terminal Co. v. Darden, 38 S.W.2d 777 (Tex.Com.App. 1931, jdgmt. adopted). Unavoidable acci-

dent is present when an event occurs which was not proximately caused by the negligence of any party to the event. Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952); Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790 (1941). Berner's requested issue of unavoidable accident included that definition of the term. Professor Hodges says that "under such a definition the conduct of any person could not be the basis for a finding that there was an unavoidable accident * * *. The result is that the issue is to be used only to inquire about the possible causal effect of some physical condition of circumstance." Hodges, Special Issue Submission in Texas, Sec. 19 (1959). This would ordinarily include such non-human things as fog, snow, sleet, wet or slick pavement, or obstruction of the view.

The evidence in this case suggests no cause for the accident other than the conduct of the parties to the event, the defendant Berner and the child Jeffrey. This seems to support the trial court's refusal to submit the unavoidable accident issue under the usual definition of unavoidable accident. However, the general statement of the rule contemplates that the parties to the event will be capable of negligence. We are here dealing with one party who was a child so young as to be incapable of negligence. According to some of the evidence, Jeffrey darted into the path of the vehicle. In our opinion, proof of such facts raised unavoidable accident. Childress v. Martens, 444 S.W.2d 362 (Tex.Civ.App.1969, writ ref. n. r. e.); Shaw v. Null, 397 S.W.2d 523 (Tex.Civ. App. 1965, no writ); Haynes v. Martinez, 260 S.W.2d 369 (Tex.Civ.App.1953, writ ref. n. r. e.); Wichita Transit Co. v. Sanders, 214 S.W.2d 810 (Tex.Civ.App. 1948, no writ); Hodges, Special Issue Submission in Texas, Sec. 21 (1959). Upon the retrial of this cause, if there is evidence of unavoidable accident, Berner will be entitled to the usual definition of the term with an additional explanatory charge that Jeffrey by reason of his age did not possess the experience, intelligence, and capacity to be negligent.

By counterpoint Berner has urged that the trial court erred in refusing to submit his requested issues inquiring if he was acting under a sudden emergency. There is some evidence that when the child approached the car, Berner was confronted with a sudden and unexpected condition without time for deliberation. We agree that Berner was entitled to have this aspect of the case presented to the jury for their consideration.

Defendant Berner also requested an issue, conditioned upon an affirmative answer to the sudden emergency issues, inquiring whether such emergency was the sole proximate cause of the accident. The requested issue conforms to the practice recommended in Section 3.07, 1 Texas Pattern Jury Charges (1969). The comment under that section questions the necessity for such an issue but notes that a number of decisions have held that sole proximate cause is an appropriate issue for submission in conjunction with the sudden emergency issue. Missouri Pacific Railroad Co. v. Young, 403 S.W.2d 898 (Tex.Civ.App.1966, no writ); Stephens v. McCarter, 355 S.W. 2d 93 (Tex.Civ.App.1962, no writ); City Transportation Co. of Dallas v. Vatsures, 278 S.W.2d 373 (Tex.Civ.App.1955, writ dism.); Williams v. Voight, 264 S.W.2d 454 (Tex.Civ.App.1954, writ ref. n. r. e.).

We disapprove the four cases cited above because they misconceive the purpose of the sudden emergency doctrine. Its purpose is to excuse conduct which otherwise would be negligence. It concerns the negligence issue, and sole proximate cause is irrelevant to that doctrine. A growing number of cases ignore this court's rather clear expression in Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386 (1951) where we said:

* * * It is respondent's theory that "the doctrine of imminent peril is a

principle or basis of liability." An expression in this court's opinion in Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545, seems to lend support to the view that the doctrine of imminent peril is a basis of liability. While we fully agree with the decision in that case, we are unwilling to accept respondent's theory as an established principle in this court. The doctrine of imminent peril is one which may be invoked to relieve a party of the consequences of his conduct, which otherwise would be held negligent. It is most often invoked as a defense to a charge of contributory negligence. International & G.N.R.R. Co. v. Neff, 87 Tex. 303, 28 S.W. 283; Jackson v. Galveston, H. & S. A. Ry. Co., 90 Tex. 372, 38 S.W. 745; Fort Worth & D. C. Ry. Co. v. Kimbrow, 131 Tex. 117, 112 S.W. 2d 712; Foster v. Woodward, Tex.Civ. App., 134 S.W.2d 417, error refused. But it properly may be invoked as a defense to a charge of primary negligence. Dallas Ry. & Terminal Co. v. Young, Tex.Civ.App., 155 S.W.2d 414, error refused; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679, 684 (approval of lower court's holding permitting submission of issues on defendant's sudden emergency.) In either instance it is invoked to lower the legal standard of care which a party must exercise to the point where conduct which otherwise might be regarded as negligent or contributorily negligent is not so regarded.

We hold that sole proximate cause is immaterial to the function of the sudden emergency doctrine. See, Fort Worth & D. C. Ry. Co. v. Kimbrow, 131 Tex. 117, 112 S.W.2d 712 (1938); Hodges, Special Issue Submission in Texas, Sec. 24 (1959); Kronzer, Personal Injury Litigation in Texas, Sec. 12.12; Parish, Sudden Emergency and Sole Proximate Cause, 23 Tex. Bar Jl. 725, 784 (1960); Thode, Imminent Peril and Emergency in Texas, 40 Texas L.Rev. 441 (1962).

To this point we have discussed the rights of the parties upon the basis of the existing practice in Texas of separately submitting the unavoidable accident and sudden emergency issues. That was the practice at the time of the trial and the rights of the parties have been measured by that standard. We make these further holdings concerning the manner of submitting, upon retrial, the issues concerning unavoidable accident and sudden emergency. This court held in Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449 (1941):

"The *only* legitimate purpose to be served in submitting unavoidable accident is to call the matter to the attention of the jury, so that it will not be overlooked, and so that the jury will understand that they do not necessarily have to find that one or the other parties to the suit was to blame for the occurrence complained of. This purpose is fully accomplished when the jury is told that the occurrence in question was an unavoidable accident if it happened without the negligence of either of the parties to the suit." (Emphasis added).

There has been a great departure from this original function of the issue. It has become an instrument, and one of right, to raise conflicts in jury issues which defeat a verdict and a trial. Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772 (1960). Professor Green has condemned the issue as one which creates the right to set a trap for the jury. Green, Blindfolding the Jury, 33 Tex.L.Rev. 273 (1955).

This court in Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952) restated the rule that new and independent cause should not be submitted as a separate issue, since it can adequately be included in the proximate cause issues by definition. Since the only real purpose of the unavoidable accident issue is to make sure the jury is advised of it, there is no stronger reason for the separate submission of the unavoidable accident concept than there is for the new and independent cause concept. The same may be said for the separate submission of the sudden emer-

gency issues. In our opinion the purpose which each of these concepts serves will be served better by explanatory charges or definitions. The present practice of separate submission of those issues has been the author of much confusion and mischief, has unduly complicated the special issue system, and has, on occasion, smothered what otherwise would be a simple submission under the special issue system.

We accordingly hold the better practice dictates that, upon retrial of this case, if the evidence presents these theories, the defendant Berner will be entitled to suitable explanatory charges or definitions which fairly present to the jury the fact that unavoidable accident and sudden emergency may be present. Separate issues will not be necessary.

We reverse that part of the judgment of the court of civil appeals which rendered judgment against Alfred Kent Yarborough, the father. We affirm that part of the judgment which reversed the judgment of the trial court in favor of Jeffrey Lee Yarborough. We remand the entire cause to the trial court for retrial consistent with this opinion.