**AUSTIN ROAD COMPANY, Appellant,**

v.

**Mary K. EVANS et al., Appellees.**

No. 17381.

Court of Civil Appeals of Texas,
Fort Worth.

June 15, 1973.

Rehearing Denied July 13, 1973.

Brown, Crowley, Simon & Peebles, and M. Hendricks Brown, Fort Worth, for appellant.

Strasburger, Price, Kelton, Martin & Unis, and Royal H. Brin, Jr., Dallas, for appellees, Mary K. and Terry V. Evans.

C. Coit Mock, Fort Worth, for Mary K. and Terry V. Evans, appellees and cross-appellants.

Thompson, Knight, Simmons & Bullion, and Timothy E. Kelley and George Butts, Dallas, for appellees, Larry & Rosemary Carson.

## OPINION

PER CURIAM.

The appeal is by defendant Austin Road Company from judgments for damages in negligent tort obtained by two sets of plaintiffs, and by cross-plaintiffs Mary K. Evans, et vir as against Austin Road Company because of their failure to obtain a like judgment as a consequence of jury findings which convicted them of contributory negligence. Companion thereto is the appeal of Austin Road Company from that part of the trial court's judgment which

relieves Mary K. Evans, et vir of any liability to the other two sets of plaintiffs by granting indemnity over against Austin Road. Additionally Austin Road Company complains because of denial of its claim to indemnity against Mary K. Evans, et vir.

We affirm the judgment of the trial court.

For convenience we will generally treat parties in the singular.

On a dry August morning in 1970 Mrs. McEneny was driving west in her car on her way to work in Fort Worth. Mrs. Carson, in her car, was behind proceeding in the same direction. In an automobile behind Mrs. Carson, traveling in the same direction, was Mrs. Mary K. Evans. The roadway traveled by the three was one-way for traffic proceeding west. To the left, south of these motorists, was an area in which construction was in progress to prepare the roadbed for a freeway.

The general contractor for this construction was Austin Road Company. Its subcontractor, Cletex Trucking Company, provided the lime compound to be spread upon the ground in preparation of the base upon which concrete would be poured. This lime was spread by driving trucks in which it was delivered in a westerly direction on the very ground to be prepared so that there was a distribution of the lime compound as it spilled from the truck beds. This activity, coupled with weather conditions, resulted in a lime dust cloud which had not yet settled to the ground and which obscured a portion of the roadway being traveled by Mrs. McEneny, the Carsons, and Mrs. Evans.

The condition was not newly created on the particular day in question. It had persisted for some time. Each of the aforementioned motorists had experienced the condition on prior occasions. On such prior occasions each had safely passed through the dust cloud to a point where unobstructed visibility obtained to the west. On the particular morning in question, however, a combination of weather conditions, including wind direction and velocity, resulted in an unusually thick cloud of the lime dust drifting to the north and stalling over the traveled roadway. Because of such conditions the lime cloud was so thick that motorists unaware of its unusual density were confronted with a visibility situation which so obscured their vision that they could not see the edge of the roadway or a vehicle ahead of them.

Encountering this condition upon her entry into the dust cloud Mrs. McEneny reduced the speed of her car and continued her travel at reduced speed. The Carsons, following behind her, did likewise. Mrs. Evans, following behind, was found by the jury to be negligent because of her speed and failure to properly apply her brakes, and that each was a proximate cause. Mrs. McEneny and the Carsons were exonerated of any negligence. Mrs. Evans' car struck the rear of the Carson automobile and knocked it forward and into the rear of Mrs. McEneny's vehicle. All three automobiles sustained property damage. All individuals in them sustained personal injuries.

Mrs. McEneny actually did not name the Carsons as parties defendant, but for convenience we may treat this case as one where the parties suffering injuries and property damage sued one another under every theory common to cases of rear-end collision. Additionally they all sued Austin Road Company upon every conceivable theory possible under the circumstances for negligent acts and omissions in violation of duty owed the injured and damaged parties. Additionally, Mrs. Evans sued Austin Road for indemnity as applied to the suits against her by Mrs. McEneny and Mrs. Carson. The Austin Road Company sustained no damage. Its position upon trial was substantially that of a defendant; however it did sue Mrs. Evans for indemnity as applied to the suits against it by Mrs. McEneny and the Carsons.

The jury found Austin Road Company was responsible for the creation of a "dangerous condition" by reason of the lime

dust, of which it failed to give notice to each defendant; that it failed to post a flagman on the roadway with instructions to stop motorists approaching the area of dust when in the exercise of ordinary care it would have so positioned and instructed a flagman; that the flagman it did post failed to stop traffic, including the automobile of Mrs. Evans; that it discovered that the unloading of the lime was creating a dangerous condition on the roadway prior to the time of the collisions but permitted the operation to proceed; and, applicable to each of such findings, that such acts and omissions constituted negligence amounting to proximate cause of the collisions of the McEneny, Carson, and Evans automobiles and the damages flowing therefrom.

In respect to all jury findings mentioned it is our holding that each were supported by evidence having probative force and effect, and that none of such findings were so contrary to the great weight and preponderance of the evidence as to be clearly erroneous.

Austin Road Company complains because of the admission into evidence of a clause of its construction contract with the State Highway Commission and of the refusal by the court thereafter to permit it to introduce into evidence an "amendment" to such clause which was contained in the same contract. Austin Road Company further complains of the court's refusal to admit the testimony of an inspector for the State Highway Department and of an official of the Austin Road Company concerning the right-of-control and right of direction by the Highway Department over the work in which Austin Road was engaged. The testimony is presented by Bill of Exception.

The exclusion of the testimony of the inspector and company official was correct because it involved the province of the jury. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958). An additional reason for excluding their testimony is that the written contract between the parties spelling out duties is the best evidence and precluded the oral testimony of the inspector and company official.

That part of the contract between Austin Road Company and the State Highway Department which was admitted, read as follows:

"7.7. Public Safety and Convenience. The safety of the public and the convenience of traffic shall be regarded as of prime importance. Unless otherwise shown on plans or except as herein provided, all portions of the highway shall be kept open to traffic. It shall be the entire responsibility of the Contractor to provide for traffic along and across the highway as well as for ingress and egress to private property all as specified herein, as shown on plans or as directed by the Engineer.

". . . If at any time during construction the approved plan does not accomplish the intended purpose, due to weather or other conditions affecting the safe handling of traffic, the Contractor shall immediately make necessary changes therein to correct the unsatisfactory conditions."

That part of the contract between Austin Road Company and the State Highway Department which was excluded from the jury, read as follows:

"For this project, Item 7 'Legal Relations and Responsibilities to the Public', of the Standard Specifications is hereby supplemented by the following:

"It is specifically agreed between the parties executing this contract that it is not intended by any of the provisions of any part of the contract to create the public or any member thereof a third party beneficiary hereunder, or to authorize any one not a party to this contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this contract. The duties, obligations and responsibilities of the parties to this contract with respect to third parties shall remain as imposed by law."

■ Admissibility of that portion of the contract which was admitted into evidence resulted because Austin Road Company was stoutly insisting that it had no duty to the traveling public with regard to traffic along the highway adjacent to the area where work was in progress. The admitted portion of the contract exhibited the fact that not only would such a duty be imposed as a matter of common law, but that contrary to such contention it had furthermore contracted in writing with respect to that duty.

■ Refusal to permit introduction of the excluded portion of the contract was proper because the parties to it were seeking, as between themselves, to control rights and responsibilities in tort of one or the other or both of them to parties outside the contract. Furthermore it was immaterial to any of the issues.

Conceding that since the 1971 decision of Texas Supreme Court in the case of Yarborough v. Berner, 467 S.W.2d 188, there is no longer a necessity to separately submit the issue of "unavoidable accident". The Austin Road Company insists that it was the trial court's duty to inform the jury that adverse parties were obligated to prove by a preponderance of the evidence that the occurrence in question was not an unavoidable accident.

■ The trial court included among its instructions the following: "The occurrence of an accident does not necessarily imply the failure to use ordinary care on the part of any party to it, as an accident may occur which was not proximately caused by the failure to use ordinary care of any party to it. (Such an accident is known in law as an 'unavoidable accident.')" The above instruction cured the objection of the Austin Road Company. By the action of the court properly placing the burden of proof in the individual issues inquiring about Austin Road Company and its acts and/or omissions its duty of proper preparation of the charge was fulfilled. The answers returned were against Austin

Road Company by a preponderance of the evidence. Thereby all parties adversary to Austin Road discharged the burden of proving that the occurrence was not an unavoidable accident. The requirements of the law, specified in Yarborough v. Berner, supra, and in Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449 (1941), were satisfied by the instruction the trial court gave.

The trial court granted indemnity to Mrs. Evans as applied to the judgments of Mrs. McEneny and the Carsons, thus Mrs. Evans obtained a "judgment over" against Austin Road Company. The same judgment denied any right of Mrs. Evans to recover damages against Austin Road because of her personal injuries and property damage in view of the jury findings that she was guilty of contributory negligence.

■ There is a question of whether Mrs. Evans' claim for indemnity was in her pleadings before trial. In any event her Trial Amendment directed to the matter of indemnity, filed after verdict but before judgment, cured all problems. The pleadings should be treated, as they were, as having raised the issue at a proper time. The matter involved not requiring any additional evidence, or, if it could have Austin Road not having sought to reopen the case and to introduce any new evidence, was proper to be treated as though it was a part of the pleadings of Mrs. Evans at the very time of the trial. Texas Rules of Civil Procedure 66, "Trial Amendment". On this reference is made to McDonald, Texas Civil Practice, p. 327, "Supplemental and Amended Pleadings", Sec. 8.07, "—B. Trial Amendment".

Austin Road Company contends that even if the issue be treated as raised by pleadings the award of such indemnity to the Evanses was an improper application of the law relating thereto, and that because thereof the award of indemnity should be reversed. However, our holding is to the contrary; that it was a correct application of the law of indemnity.

Professor Gus M. Hodges, in 26 Tex.L. Rev. 150, "Contribution and Indemnity" states the Texas law to be as follows: "When there are two tortfeasors, either or both of whom are liable to an injured third person, but one of whom has breached a duty which he owed both to his co-tort-feasor and to the injured third person, then the tortfeasor who, to his co-tortfeasor, is blameless, should be allowed indemnity."

The rule is thus stated in Tobin & Rooney Plastering Company v. Giles, 418 S. W.2d 598 (Texarkana Civ.App.1967, no writ hist.): "Under the law in Texas, the third party plaintiff is entitled to full reimbursement, in the event the third party defendant has breached a duty to the third party plaintiff where the third party plaintiff has breached no duty owed to the third party defendant."

The rule is also stated in Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449 (1941), 140 A.L.R. 1301, preceding the Annotation: "Contribution or indemnity between joint tort-feasors where injury to third person results from violation of a duty which one tort-feasor owes to another". Therein the court wrote: "Where the injury forming the basis for the judgment against the joint tort-feasors results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at common law, is entitled to contribution or indemnity from the former. (Citing cases) Under these circumstances, we think that, even if the street car company had been required to pay the judgment in favor of Mrs. Wheeler, or any part thereof, by reason of its failure to exercise a very high degree of care for her protection (as a passenger), yet it would have been entitled at common law to have complete indemnity from Glazer."

Statement relative to Texas law was made in Brown & Root v. United States, 92 F.Supp. 257, 262 (affirmed at 198 F.2d 138, 5th Circuit, 1952), where the court wrote: "The right of indemnity has long been recognized to exist between joint tort-feasors where the negligence of the two was of a different degree of culpability. Many of the older cases have permitted indemnity in favor of one whose negligence was 'passive' against the other whose negligence was 'active', or in favor of one whose wrong was one of 'omission' against the other whose wrong was one of 'commission', (citing cases). But this is a most uncertain and unsatisfactory test, made to depend upon the manner of expression rather than the quality of the wrong.

"In three recent cases, the Supreme Court of Texas seems to have laid aside the 'passive' versus 'active' negligence test, and announced the rule that indemnity between tort-feasors lies only *where one tort-feasor breaches a duty which he owes to the other* (as distinguished from the breach of duty which each has committed as to the plaintiff)." (Emphasis that of the Court.)

■■■ Upon application of the rule to the instant case we find that both Austin Road Company and Mrs. Evans have been guilty of breach of duty as applied to Mrs. McEneny and the Carsons, with Austin Road furthermore guilty of a breach of duty to Mrs. Evans. However, Mrs. Evans having breached no duty to Austin Road Company is entitled to impose the ultimate liability to pay the amount of the McEneny and Carson damages upon the Austin Road Company. The trial court did not err in entering its judgment in such respect. It follows, of course, that Austin Road Company is not entitled to indemnity against Mrs. Evans. This it sought by contention made under the old "passive versus active" negligent test, certainly not honored in Texas at this time.

Austin Road Company complains of excessiveness in the verdict in respect to the amount of damages allowed because of the injuries Mrs. Carson sustained in and as the result of the collision in question. The jury allowed her $10,000.00 for past pain and suffering, $4,550.00 for loss of earnings past, and $2,500.00 for loss of earnings future, and $1,759.79 for necessary medical and hospital bills. Reversal is sought on

the contention that there was no evidence to support the findings on special issues, or in the alternative that the findings were so against the great weight and preponderance of the evidence as to be clearly wrong, and alternatively, Austin Road desires a remittitur.

Reference to the record reveals that the actual matter in controversy stems from a condition of Mrs. Carson's left knee. She knew shortly after the collision that she had a "bump" on the knee but nothing in connection therewith to give cause for concern. What was at first deemed to be the injury of greatest consequence consisted in the wrenching of her back. This injury proved to be of relative insignificance, not requiring hospitalization following emergency treatment. However, September 29th, about six or seven weeks after the occurrence of the accident, Mrs. Carson sought medical assistance because of a condition which had developed in her left knee.

Mrs. Carson testified that prior to the occasion in question she had never experienced any difficulty with her knee; that she first began having difficulty with it about two weeks after the accident in that it began "catching" and became stiff such that it did not bend normally; that there was accompanying pain and swelling; that the pain which she experienced in trying to bend the knee continued until the time that her knee was operated on.

The attending physician testified that when Mrs. Carson presented herself on September 29th her knee was quite swollen; that X-rays indicated that there was a torn cartilage within the knee, a loosened bone flake or chip, and a "spurring" within the knee joint. Surgery was recommended and there was resort thereto pursuant to which the initial diagnosis was confirmed. Two bone chips were removed as was some diseased cartilage. After the surgery there was a two-week period of convalescence in the hospital during which time her leg was in a partial cast, and during which she experienced pain due to the operation. Later she was put on a program of therapy which involved exercises which were accompanied by pain. After the operation Mrs. Carson was regularly attended by her physician for a period of approximately five months. At the end of such period she was having discomfort in the knee involving swelling and a wasting away or atrophy of muscles in her thigh above the knee. At time of the trial, approximately one and one-half years after the injuries were sustained the condition continued to obtain. A demonstration upon the body of Mrs. Carson was made with request for a tightening of the thigh muscles so that the jury could observe the wasting away or atrophy above mentioned. The doctor testified that Mrs. Carson had reached a plateau of her convalescence and that in reasonable medical probability she will continue to experience 10 to 15 per cent disability in the affected limb, and that her condition is more likely to deteriorate than to improve; that in reasonable medical probability additional treatment will be required.

There was testimony at some length concerning the extremely active life led by Mrs. Carson before the injury, and the effect of her inability to do those things with her husband that had theretofore been her wont such as riding horseback, hiking, bowling, and water skiing. Mrs. Carson did not testify that she experiences mental anguish in consequence of her inability to participate with her husband in activities which the jury would have been entitled to believe was part of the affinity and relationship which caused them to become husband and wife. Counsel argues that the jury would have the right to take into consideration the likely diminishment or discontinuance of the affection between them in consequence thereof as part of the injury she had sustained.

We hold that the evidence upon Mrs. Carson's damages was sufficient to support the jury's findings thereon and that such findings were not so against the great weight and preponderance of the evidence as to be clearly wrong, or to indicate that any passion or prejudice entered into and played a part in the jury's decision

upon damages. By the evidence the amount of damages awarded by the jury was not excessive and remittitur as a condition of affirmance will not be required.

Actually, upon the operation on Mrs. Carson's knee it was discovered that the fragments of bone which were removed had apparently been loosened, but not detached from the kneecap, at time of some antecedent unremembered injury. Arthritic changes as result had already played a part in a condition which might have ultimately caused the same disability, pain, medical attention, etc., that followed the accident of 1970. The jury was free to conclude, however, that there would not have been such except for the occurrence of the accident; that her active life, free from pain or disability of the leg and knee, would have probably continued as before if not injured by the collision.

This brings us to the point of error presented by Mrs. Evans in complaint of the manner by which, over objection, the jury was chosen. The complaint is because Mrs. Evans was given only the six peremptory challenges by Texas Rules of Civil Procedure 233, "Number of Peremptory Challenges," in the course of selecting the jury to try the case, while Austin Road Company was given nine. Mrs. Carson was given six jury "strikes" and Mrs. McEneny was given a like number. They make no complaint since as to their cases they emerged victorious, though they did object at the time of the court's announcement that Austin Road would be allowed nine jury "strikes".

Until 1971 the law relative to the number of peremptory challenges was embodied in T.R.C.P. 233, "Number of Peremptory Challenges," reading as follows: "Each party to a civil suit shall be entitled to six peremptory challenges in a case tried in the district court, and to three in the county court." The same provision was made in the statute which was predecessor of this Rule. Vernon's Ann.Tex.St., Art. 2148.

A question exists as to whether the provisions of Rule 233 were changed by Texas 62nd Legislature, at its Regular Session in 1971 by the enactment of V.A.T.S. art. 2151a, and appearing in Texas General and Special Laws at page 2801, reading in part as follows:

"Section 13. After proper alignment of parties, it shall be the duty of the court to equalize the number of peremptory challenges provided under Rule 233, Texas Rules of Civil Procedure, Annotated, in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party."

Under the decisions prior to the enactment of the 1971 Statute the state of the law was such that no individual "party" to a lawsuit could be entitled to more than the six peremptory challenges prescribed by T.R.C.P. 233. If more than one party litigant in the same suit had an interest wholly in common with and identical to another then, as applied to the litigation involved, they should be treated as a single "party" for purposes of alignment and as such permitted only six peremptory challenges. 35 Tex.Jur.2d, p. 183, "Jury", Sec. 123, "—Where there are coplaintiffs and codefendants in civil suit"; McDonald, Texas Civil Practice, "Jury Trial: General", Sec. 11.12.1., "— —(II) Peremptory Challenge"; Turner v. Turner, 385 S.W.2d 230 (Tex.Sup.1964). Therefore, except the application of the provisions of the 1971 Statute to effect a change in the law there would be a necessity to reverse the judgment in the case as between Mrs. Evans and Austin Road Company. In so stating the majority recognizes the importance of the element of probable harm in consequence of error of this type, but the dissenting opinion filed simultaneously herewith contains discussion thereof and in view of the holding of the majority would be no proper part of its opinion.

Our holding is that, perforce the provisions of the 1971 Statute as applicable to the instant question there has been an effective change in the law so that, except there be an abuse of discretion in the allotment of peremptory challenges by the

trial court in his discharge of the duty to equalize the number of peremptory challenges permitted the parties litigant there should be no reversal even though one party be allowed to make more than six peremptory challenges. Here there was no abuse of discretion warranting reversal.

In so holding there is necessity to resort to the rules of statutory construction. Among these is the rule that a statute will be construed in such a manner as to make it effective, that is, enforceable and operative, if it is fairly susceptible of such an interpretation. 53 Tex.Jur.2d, p. 223, "Statutes", Sec. 157 "(Giving Effect to Statute) In general". Another is the rule which requires a court in construing ambiguous phraseology or conflicting statutory provisions should resort not only to the language of the particular act and that of other acts in pari materia, but also the circumstances attending its passage that bear on the legislative intention, keeping in view at all times the old law, the evil and the remedy, particularly when a mere perusal of the statute does not enable the court satisfactorily to interpret it. This rule has a peculiar application to procedural statutes regulating the manner in which the courts are required to perform official functions. 53 Tex.Jur.2d, p. 235, "Statutes", Sec. 162 "(Circumstances Indicating Legislative Intention) In general". Still another is the rule which requires recognition of that which is implied in a statute as well as that which is expressed. Interpretation by implication is permitted, out of the necessity of the case, to supply an obvious intention not expressly stated. In other words, when a statute commands or grants anything, it impliedly authorizes whatever is necessary for executing its commands or whatever is indispensable to the enjoyment or exercise of the grant. A statutory grant of an express power carries with it, by implication, every incidental power that is necessary and proper to the execution of the power expressly granted. 53 Tex.Jur.2d, p. 203, "Statutes", Sec. 141 "(Implications and Inferences) In general".

In connection with the foregoing there had been written before 1971 the article of professor Albert P. Jones of the University of Texas Law School on the advisability of a change of Rule 233. Vol. 45, Texas L.Rev., p. 80, "Peremptory Challenges—Should Rule 233 be Changed?" It would be reasonable to believe that the Legislature, in 1971, was considering those things discussed in the article, and perhaps the article itself, when it enacted the statute in question.

The judgment is affirmed.

MASSEY, Chief Justice (dissenting).

I respectfully dissent from part of the holding of the majority of the Court.

If the Legislature intended by Section 13 of the 1971 enactment to effect remedial legislation I cannot, by resort to any rule of statutory construction, determine what it might have been. As I view it the statute did no more than state pre-existent common law and make it statutory. This has often been done before the occasion here considered.

Had there been provision therein that the court "proportionalize" the number of peremptory challenges allowed parties litigant there might have been room for construction, but the same would not be true of the provision that the court "equalize" the number of peremptory challenges allowed. As I view it the case is one in which the trial court sought to "proportionalize" the number of strikes allowed parties. Except for my opinion that the court was limited to six (6) challenges allowable to any party I would not deem what the court did to have amounted to an abuse of discretion.

However, my conclusion is that by the 1971 enactment the Legislature did no more than reduce to written form the law as interpreted and declared in preceding years relative to Rule 233 and its statutory predecessor.

If I am correct in my opinion that the 1971 Statute did not change existing law then the principles of case law continue to

serve to guide and control the decision in the instant case, both upon the question of error, and upon reversibility because of error.

Thereunder it is obvious that the allowance of more than six peremptory challenges by Austin Road Company would constitute error. Propriety of this statement is obvious when it is to be observed that if Austin Road, in its position as a "party", had actually been several "persons" whose positions were so identical that as applied to the litigation they should be treated as a single "party" for purposes of alignment they would have been permitted only six peremptory challenges. 35 Tex.Jur.2d, p. 183, "Jury", Sec. 123, "— Where there are coplaintiffs and codefendants in civil suit"; McDonald, Texas Civil Practice, "Jury Trial: General", Sec. 11.- 12.1., "— —(II) Peremptory Challenge"; Turner v. Turner, 385 S.W.2d 230 (Tex. Sup.1964).

I have been cited to no case, and have found none, which specifically holds that an individual "party" to a lawsuit shall not be entitled to more than the six peremptory challenges prescribed by T.R.C.P. 233. Yet it would appear that there should be no doubt that such is the limitation by law. The right of peremptory challenge does not exist at common law, being purely statutory. 50 C.J.S., p. 1069, "Juries", Sec. 280, "(Peremptory Challenges—Nature and Right) b. In Civil Cases". T.R.C.P. 233, "Peremptory Challenges" and the statute which was its predecessor, repeated by the Rule, amounted to remedial legislation which specified the entitlement of a "party" to have six peremptory challenges in the course of the selection of a jury to try a case in a District Court in Texas. Six peremptory challenges having been authorized there was a limitation to such number by the rule of statutory construction exemplified by the maxim *expressio uni- usest exclusio alterius*. 53 Tex.Jur.2d, p. 205, "Statutes", Sec. 142, "Expressio unius rule", and the antecedent Sec. 141, at p. 203, "(Implications and Inferences) In general". Annotated cases include Tyson

v. Britton, 6 Tex. 222, and Roberts v. Yarboro, 41 Tex. 449, which speak of the inhibition of any extension of the rule by mere implication or parity of reason. Clearly T.R.C.P. 233 means that a "party" is allowed six peremptory challenges *but not more than six* in a District Court case. In view thereof my holding would be that there was error in permitting Austin Road Company nine peremptory challenges.

Thus I reach the question of reversibility because of the error.

While I am uncertain whether it is the only question the answer to which is determinative of reversibility, one which would be thus determinative is whether the complaining party was thereby compelled to permit a juror to try his case whom he would not have been compelled to accept but for the error.

Tamburello v. Welch, 392 S.W.2d 114 (Tex.Sup.1965) was a case where there was three-car collision. The plaintiff, in the first vehicle, sued both drivers of the second and third. The trial court allowed the defendants a total of six peremptory challenges, against the contention that each, as an individual "party", was entitled to six (a total of twelve). The holding of the Supreme Court was that each defendant constituted a separate "party", in consequence of which there had been error in the refusal to permit each to have six peremptory challenges.

The reversal ordered by the Supreme Court, as I construe the opinion, was because there was prejudice to each of the defendants in consequence of the inbalance in the make-up of the jury which tried the case (to be presumed despite the provisions of T.R.C.P. 434 and 503, which the court held to be inapplicable to the question of fair trial involved). In *Tamburello* it was not because the plaintiff was allowed too many "strikes", but because each defendant was permitted too few "strikes" that judgment was reversed. In view of the denial of the entitlement of each defendant (as separate "parties") to six "strikes" by Rule 233 reversibility was more readily perceivable in *Tamburello* than in the case before

this court. However, the spirit of the Rule is the same in either case, in that its objective is, to use words out of Section 13 of V.A.T.S. Art. 2151a, "so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party."

Here, as was the case in *Tamburello,* every "person" exercised all the "strikes" allowed by the court. Mrs. Evans took her six, Austin Road its nine. Having been permitted nine "strikes" it would be presumed, absent showing of Austin Road to the contrary, that three of those it struck might otherwise have served on the jury that tried the case. Fully applicable to such situation is language of the Supreme Court in *Tamburello,* though it was speaking of the situation where each of two "parties" were complaining because each had received too few strikes rather than because their adversary (of each) had received too many, viz: "If each of the defendants had been allowed six peremptory challenges, the jury would have been composed of six persons who served on the jury and six other members of the panel who did not. A jury so constituted might well have exonerated one of the defendants entirely, and it is our opinion that the trial was so materially unfair that the judgment cannot be upheld."

In Rivas v. Liberty Mutual Insurance Company, 480 S.W.2d 610 (Tex.Sup.1972), the court speaks in interpretation of its opinion in *Tamburello* to the effect that the error therein ruled upon amounted to a violation of the fundamental right of trial by jury, and that such error raised an inference of probable harm. In other words, as applied to such a situation the "harmless error rule" (T.R.C.P. 434) is without application and the burden to prove "harmlessness" of the erroneous constitution of the jury which tried the case is cast upon him who seeks to uphold the judgment. See also Vol. 45, Texas L.Rev., p. 80, "Peremptory Challenges—Should Rule 233 be Changed?" to which the majority has made reference.

Since the burden to demonstrate probable harm is not required to be borne by Mrs. Evans, its inference being presumed, Austin Road Company bore the contradictory burden of showing that there was absence of probable harm. Of such absence Austin Road has not made demonstration, hence my conclusion that a judgment of reversal is compelled.

My conception of the proper action of this court would be to sever the case as applied to the suits of Mrs. McEneny and Mrs. Carson and their husbands and then to affirm the judgments they obtained as against both Austin Road Company and Mr. and Mrs. Evans.

I would reverse the trial court's judgment and remand the same for a new trial as applied to Mrs. Evans' suit for damages for negligent tort against Austin Road Company. The question arises: should the reversal be accompanied by like reversal and remand of that part of the judgment which awards Mrs. Evans and her husband indemnity against Austin Road Company as applied to their liability in damages to Mrs. McEneny and Mrs. Carson? I would so hold.

I believe that it would be necessary that there be another trial of the issue of indemnity between Austin Road Company and the Evanses if there is to be another trial of the issue of liability of the Austin Road Company.

Where the separate recovery of separate parties depended upon the same evidence it was held that the judgment of one could not be upheld when there was reversal of the judgment of the other. Houston Oxygen Co. v. Davis, 139 Tex. 1, 161 S.W.2d 474 (1942), 140 A.L.R. 868 (1942); 4 Tex.Jur.2d, p. 462, "Appeal and Error—Civil". Sec. 875, "Severability as to parties". Of course, where the error occasioning reversal affects only the amount of damages in a cross-action having no essential connection with the plaintiff's claim there might be a reversal only as applied to the erroneous portion of the judgment. 4

Tex.Jur.2d, p. 456, "Appeal and Error—Civil", Sec. 872, "Reversal as to some issues."

In the instant case I have concluded that the error affects not only the right of Mrs. Evans and her husband to damages, but also their right to claim indemnity of Austin Road Company. That they were fortunate enough to prevail in that aspect, despite the error which occasioned reversal and a new opportunity to try their case for their own damages, would not justify a severance so that they would at the same time retain the victory won before the trial court upon the indemnity issue. The reason they cannot retain their victory as applied to indemnity is that their case, in either aspect, depended in part at least upon the same evidence, having relevance to the same, or common issues. 4 Tex.Jur.2d, p. 459, "Appeal and Error—Civil", Sec. 874, "Severability of judgment or issues."

I would reverse the judgment as between Mrs. Evans and Austin Road Company and as to them remand the case.