**ROY L. MARTIN & ASSOCIATES, LIM-ITED, et al., Appellants,**

v.

**Bob R. RENFRO et al., Appellees.**

**No. 15041.**

Court of Civil Appeals of Texas, San Antonio.

June 14, 1972.

Rehearing Denied July 19, 1972.

Foster, Lewis, Langley, Gardner & Bannack, Ralph Langley, Robert W. Wachsmuth, San Antonio, for appellants.

E. S. Prashner, Johnson & Christopher, Joe D. Prickett & Associates, Clemens, Knight, Weiss & Spencer, Thomas M. Thurmond, San Antonio, for appellees.

BARROW, Chief Justice.

Appellants, Roy L. Martin & Associates, Limited, and Alamo Lumber Company, brought suit against appellees, Bob R. Renfro, John Hester and H. T. Hardin d/b/a R & C Construction Company, and/or R & H Construction Company, and Fidelity and Deposit Company of Maryland, to recover damages for breach of a written subcontract for the construction of foundation and concrete work on the Fair Park Shopping Center in San Antonio. The appellees, except Fidelity and Deposit, who had issued performance and payment bonds on behalf of R & C Construction Company covering this job, counterclaimed for damages under the same contract and on a quantum meruit. Recovery was also sought by these appellees for sums due for work performed on a job in Alice. In addition, all defendants except Renfro sought indemnity from other defendants.

Judgment was entered after a lengthy jury trial whereby appellants recovered nothing; Renfro and Hardin recovered from appellants the sum of $32,218.10 on a quantum meruit on the San Antonio job; Renfro and Hester recovered from appellants the sum of $5,535.20 on the Alice job; Renfro and Hardin recovered from appellants the sum of $3,500.00 for attorneys' fee in connection with the San An-

tonio claim; Renfro and Hester recovered from appellants the sum of $1,500.00 for attorneys' fee in connection with the Alice claim; Fidelity and Deposit recovered from Renfro, Hester and Hardin the sum of $5,000.00 for attorneys' fee; and all costs of court were adjudged against appellants.

On June 1, 1969, Roy L. Martin & Associates, hereinafter referred to as Martin, entered into a written contract with Alamo Lumber Company, whereby Alamo agreed to construct Fair Park Shopping Center for Martin. Contrary to the written agreement, the parties actually intended for Alamo to assume only the financial burdens of the contract, and Martin was to actually perform the usual tasks of the general contractor. These parties had at least three other similar projects underway in the same fashion. Nevertheless, this subterfuge undoubtedly contributed to the complexity of the problem before us.

In June, 1969, Renfro went into business under the name of R & C Construction Company and solicited the foundation and concrete work on this job. Soon thereafter, Hester became a partner in this company. A Martin employee, John McGrath, who was employed by Martin until about August 15, 1969, negotiated with Renfro and Hester and furnished plans dated April 17, 1969. These plans contained specifications for the Woolco store, but not the Kress and Foodway stores. Nevertheless, the written subcontract entered into on July 28, 1969, between Alamo (although the negotiations were actually by Martin) and Renfro and Hester, d/b/a R & C Construction Company, provides that the latter agreed to perform the foundation and concrete work in accord with the plans of April 17, 1969. Notwithstanding this provision, Martin asserts that the parties contemplated using the plans of April 17 for the Woolco store and plans dated June 24th for the other two stores.[1] On Sep-

---

1. Considerable confusion is caused by the architect's practice of dating the plans as of time delivered to construction department. Thus, the same set of plans may have several dates and some in evidence are undated.

tember 17, 1969, Fidelity and Deposit issued performance and payment bonds for R & C covering the performance of this contract.

Renfro and Hester had little capital, and in September, 1969, experienced financial difficulty. One of the disputed issues is over the cause of this financial difficulty —whether it was unprecedented rainfall which delayed the job, failure of Martin to make progress payments as promised or whether R & C was under-financed. Nevertheless, on October 7, 1969, Renfro bought out the interest of Hester, and on October 9, 1969, Renfro entered into a contract with Hardin whereby the two formed a partnership d/b/a R & H Construction Company to complete this job. Hardin advanced additional capital and was to receive half of the profits of the job. On October 10, 1969, Martin was notified in writing of Hester's release and the contract between Renfro and Hardin. There was no evidence that Martin acknowledged this notification, but subsequent correspondence continued to be addressed to R & C.

The contractual relationship between Martin and Renfro d/b/a R & C Construction Company was terminated by Martin's letter dated October 27, 1969. A large part of the conflicting testimony relates to the question of the responsibility for such termination and the value of the work which had been completed.

Early in October, Renfro sought additional compensation from Martin because of asserted changes in the foundation from that proposed in the original plans. It is undisputed that the April 17, 1969, plans called for the grade beams to be at a depth of two feet. After the job was started, it was determined that the fill dirt was unsatisfactory and the beams must be placed on virgin soil, which required piers and beams to be at depths from two to seven feet. This change unquestionably required the use of more labor and materials by the subcontractor than the original plans of two feet. Renfro testified that this change was made by the revised plans of September 30th, whereas Martin contended that the plans of June 24th showed this change. Nevertheless, discussions regarding these extras were unsatisfactory and inconclusive.

On October 20, 1969, the construction coordinator for Martin wrote Renfro, d/b/a R & C, and suggested that the request for extras be put in writing to be approved or disapproved by Martin. Renfro was asked to stipulate in this written request whether he would proceed with the project if the extras were disapproved. The subcontract called for completion in 60 days, and the coordinator wrote that this time had been expired for 27 days, yet the job was only partially completed. On October 21, 1969, Renfro wrote and requested additional compensation of $8,792.00 to cover changes that were not in the original proposal. He advised that if this request for additional compensation of $8,792.00 was not approved, he would have to pull off the Kress and Foodway stores and charge for work completed. On October 27, 1969, the coordinator wrote and refused outright this additional charge.[2] He further advised that the contract was being terminated because of stated deficiencies in the work as well as because of the failure to complete the job within the time authorized by the contract. Martin took over completion of the foundation work, and in February, 1970, filed this suit wherein it was alleged that the completion of this subcontract cost Martin $91,000.00 over R & C's bid and sought to recover this sum.

It is seen that most of the issues submitted to the jury were resolved favorably to

---

2. Yet in February, 1970, a Martin employee who calculated the total expense of this job to determine Martin's damage, added $7,073.25 to Renfro's bid to compensate him for extras.

defendants.[3] The jury found that the parties, in signing the subcontract on July 28, 1969, did not contemplate that the plans of June 24, 1969, would be used for the Kress and Foodway stores. The jury also found that excessive rainfall and failure of the site contractors to properly prepare the site were proximate causes of R & C's failure to complete the contract in 60 calendar days. In any event, the time completion provision was waived by Martin. The jury also found that Martin's foreman (McGrath) made a material false representation to Renfro before the contract was signed that the concrete could be purchased at $11.50 per cubic yard, and that Renfro would not have signed the contract but for such representation. The subcontractors were thus permitted to recover on their quantum meruit plea for the reasonable value of the labor and material furnished on this job.

Appellants, Alamo/Martin, assert five assignments of error. The first two points complain of the action of the trial court in allowing each of the four defendants six peremptory challenges. Under the third point, appellants urge that the trial court erred in submitting special issues on fraud in the inductment of the contract; and under the fourth point, appellants assert that

3. The jury found:

1. At time contract of July 28, 1969, was signed, it was NOT within the contemplation of the parties that the plans dated June 24, 1969, would be used for the Kress and Foodway stores.

2. On September 28, 1969, R & C/R & H HAD FAILED to substantially perform that portion of the work contemplated by the parties in their contract.

3. Between July 28, 1969, and September 28, 1969, THERE WAS more rainfall than was reasonably contemplated by the parties.

3A. Such rainfall WAS a proximate cause of R & C's failure to complete its contract in 60 calendar days.

4. Between July 28, 1969, and September 28, 1969, the land site subcontors DID FAIL to properly prepare the land site.

4A. Such failure WAS a proximate cause of R & C's failure to complete its contract in 60 calendar days.

5. Martin DID intend to waive completion time requirement by allowing work to continue from September 28, 1969, to October 27, 1969.

6. On October 27, 1969, R & C HAD FAILED to sufficiently complete their work so as to allow contractor to occupy the work for the use for which it was intended.

6A. Between September 28, 1969, and October 27, 1969, there WAS more rainfall than was reasonably contemplated by the parties.

6B. Such rainfall WAS a proximate cause of R & C's failure to sufficiently complete their work.

6C. Between September 28, 1969, and October 27, 1969, other subcontractors DID store material in area where foundation was to be constructed.

6D. Such conduct was a proximate cause of R & C's failure to complete.

7. When Renfro wrote his letter of October 21, 1969, he DID intend to terminate contract unless paid additional sum of $8,792.00.

8. Reasonable value of additional labor and materials to complete Kress and Foodway foundation work in accordance with changes is $8,106.63.

9. Reasonable value of necessary labor and materials furnished by Martin/Alamo to complete foundation of the three stores after October 27, 1969, is $85,766.07.

10. The labor and materials furnished by R & C/R & H WAS of value to Martin/Alamo.

11. The reasonable value of same was $61,033.55.

12. Page 7a WAS contained within the contract of July 28, 1969, when it was signed by Renfro and Hester.

13. Prior to the signing of the contract of July 28, 1969, McGrath DID represent to Renfro that concrete could be purchased by him at $11.50 per cubic yard.

14. Such representations WERE false.

15. McGrath DID know at time that they were false.

16. They WERE made to induce Renfro and Hester to sign contract.

17. Renfro DID rely upon truth of such representations.

18. Such representations WERE a material inducement.

19. The labor and materials furnished by R & C on Alice job WAS of value to Martin.

20. The reasonable value of same was $5,087.62.

21. The amount of concrete necessarily used to complete Woolco store and other concrete work other than Foodway and Kress was 3039 cubic yards.

the trial court submitted an improper measure of damages. The fifth point seeks a remand because of six alleged *cumulative* errors, which are of both a procedural and substantive nature.

■ Rule 233, Texas Rules of Civil Procedure, provides that each party to a civil suit shall be entitled to six peremptory challenges in a case tried in the district court. It is now well settled that the word "party" as used in this rule does not mean the same thing as the word "person" and whether multiple defendants are entitled to separate peremptory challenges " . . . depends on whether their interests are, at least in part, antagonistic in a matter that the jury is to be concerned with." Retail Credit Co. v. Hyman, 316 S.W.2d 769, 771 (Tex.Civ.App.—Houston 1958, writ ref'd), approved Tamburello v. Welch, 392 S.W.2d 114 (Tex.1965).

■ From hindsight, it is obvious that the trial court erred in granting each of the defendants six peremptory challenges. Defendants are not antagonistic with each other on any of the jury issues. Furthermore, an examination of the record demonstrates that there was close cooperation and unanimity among said defendants throughout the trial, from the selection of the jury through the final arguments.[4] Forty-two prospective jurors were examined and although there were duplicate strikes in two instances between appellants and one of the defendants, each of the four defendants exercised his six peremptory challenges *without duplication with* each other. Nevertheless, it is settled law that this question is not one to be determined by hindsight, but rather by an examination of the record as of the time that the trial court granted each of the defendants six separate peremptory challenges. M. L. Mayfield Petroleum Corp. v. Kelly, 450 S.W.2d 104 (Tex.Civ.App.—Tyler

1970, writ ref'd n.r.e.); Brown & Root, Inc. v. Gragg, 444 S.W.2d 656 [Tex.Civ. App.—Houston (1st Dist.) 1969, writ ref'd n.r.e.].

Primarily, the trial court was concerned with the pleadings of the parties although extensive pretrial discovery was had in this cause prior to trial and the position of each party was well established. Martin sought recovery against each of the four defendants because of the alleged breach of the subcontract. Renfro and Hester were sued as signers of the contract, while it was alleged that Hardin had become liable by reason of his assumption of the subcontract as a partner with Renfro in R & H Construction Company. Fidelity & Deposit was sued by reason of the execution of the payment and performance bonds to secure R & C's performance of this subcontract.

Each of the defendants filed a separate answer although each expressly adopted the defensive pleadings of the other defendants. Defendants alleged that the consideration for the subcontract failed because of fraudulent representations of Martin and was further breached by reason of Martin's failure to timely pay progress payments. In addition, it was alleged by defendants that Martin did not give defendants a reasonable opportunity to complete the job. Renfro and Hardin sought recovery against Martin on a quantum meruit for the work performed on the job. Hester sought affirmative relief from Renfro and Hardin for the sum promised him as consideration for his assignment of the subcontract to Renfro. Fidelity and Deposit urged that it was not liable to Martin because the contract had been materially changed and affirmatively sought indemnity from Renfro, Hester and Hardin for any liability under the bonds.

A careful analysis of the pleadings demonstrates that Renfro and Hardin are not

---

4. Objections and requested special issues were filed by the attorney for Fidelity and Deposit on behalf of all defendants. Only the attorney for Hester supplement-

ed these objections and requested issues. His requests other than the issue on novation were also applicable to all defendants.

in the least antagonistic in a factual matter. Although Hardin sought recovery from Renfro and Hester for sums advanced to R & C Construction Company, such advances are based upon and confirmed by a written assignment of the contract executed on October 10, 1969, by Renfro on behalf of R & C. The amounts advanced by Hardin are not in dispute. Clearly, the rights under such instrument would not be factual issues.

The close relationship between Renfro and Hardin in this controversy was recognized at the outset. Hardin was represented by Joe D. Prickett, Esq. of Joe D. Prickett and Associates, a Professional Corporation. On the other hand, Renfro was represented by E. S. Prashner, Esq. The address of both attorneys is shown as 412 San Antonio Savings Building, and in fact, as late as November 4, 1970, the letterhead of Joe D. Prickett & Associates, a Professional Corporation, listed the names of "Joe D. Prickett" on the left-hand side and "Eugene S. Prashner" on the right-hand side. Obviously, these attorneys would not be in a position to represent conflicting interests before a jury even if Mr. Prashner were not a stockholder as was stated to the trial judge at the outset of the trial but only an associate. See J. W. Hill & Sons, Inc. v. Wilson, 399 S.W. 2d 152 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.).

The interest of Fidelity & Deposit is not antagonistic with the interests of Renfro, Hester or Hardin in any matter that the jury is to be concerned with. It is true that Fidelity & Deposit sought by cross-action against each of these parties to recover indemnity plus attorneys' fee for any sums that it was adjudged liable under the bonds given to secure the performance of the subcontract. However, this right would exist as a matter of law and would not involve any fact issue.

It is urged by Fidelity & Deposit that this case is controlled by the decision in Robinson v. Lovell, 238 S.W.2d 294 (Tex. Civ.App.—Galveston 1951, writ ref'd n.r. e.). In *Robinson*, the statement was made by way of dicta, without discussion, that since the insurance company had a cross-action for indemnity for any payment under its surety bond, it was entitled to exercise six separate peremptory challenges as well as the sheriff. The court did not consider or even suggest that the indemnity plea involved a fact issue. It is, therefore, contrary to the subsequent rule expressly approved by the Supreme Court in Retail Credit Co. v. Hyman, supra, and not controlling in our case.

A more difficult question is presented as to the defendant Hester. On October 7, 1969, Hester entered into a written agreement with Renfro whereby Hester transferred all of his interest in this contract to Renfro and the latter agreed to pay Hester the sum of $4,794.63, upon completion of the job. Nevertheless, Hester pleaded that this written memorandum does not correctly set forth the agreement and that actually he was supposed to receive from Renfro an additional $3,000.00 in cash on October 10, 1969, out of the progress payment which would be due on that date. Hester, accordingly, sought the sum of $7,794.63 from Renfro and also from Hardin by reason of the latter's partnership with Renfro on this job. At the trial, Renfro admitted that the entire $7,794.63 was owed to Hester. Hester also urged and requested an issue on novation, by reason of Hardin coming into the contract.

It is seen that Martin would not be involved in a dispute, if there was one, between Renfro and Hester over the terms of their partnership dissolution. In Turner v. Turner, 385 S.W.2d 230, 238 (Tex. 1965), the Supreme Court considered a similar question and there held: "The fact that the two defendants might have actions against the other as to the extent of their own liability would not entitle each to six peremptory challenges as against plaintiff's cause of action." Only Martin would be antagonistic to Hester's plea of novation.

We, therefore, conclude that the trial court erred in granting each of the defendants six separate peremptory challenges. Furthermore, such error was properly presented and preserved by Martin. Prior to the selection of the jury, the attorney for Martin excepted to the ruling of the court in granting these strikes and, at this time, pointed out in detail that the pleadings and pre-trial depositions demonstrated that none of the defendants was in a posture antagonistic to that of the other defendants in any matter that the jury might be concerned with. In addition, after Renfro testified and freely admitted his obligations to Hardin and Hester, Martin moved for a mistrial because of the extra peremptory challenges which had been granted defendants.

Defendants urge that, in any event, such error was harmless and would not require a reversal. In Tamburello v. Welch, supra, the Supreme Court considered the difficult question of showing reversible error for this type error in that, as a practical matter, an appellant will usually be unable to show that an improper judgment probably resulted from such an error. After consideration of the problem, the Court adopted the rule of Texas Employers' Ins. Ass'n. v. McCaslin, 159 Tex. 273, 317 S. W.2d 916 (1958), to the effect that the burden of the complaining party is met by showing that the trial which results in a judgment against him was materially unfair. The Court said: "If a party is improperly denied a single challenge to which he is entitled, the trial may not be so unfair as to warrant a reversal in the absence of some additional showing of prejudice. On the other hand a judgment could not be permitted to stand where one of the litigants has been allowed no peremptory challenges at all." 392 S.W.2d 114 at 118.

We have reviewed the lengthy statement of facts as well as the many exhibits introduced during the trial. It is seen that the evidence was sharply conflicting on many vital issues. The exact terms of the written contract were even in dispute in that Renfro testified that Paragraph 7a (waiver of lien) was added after he signed the contract. Considerable confusion should have been expected in that, at least two and possibly three subcontracts were prepared by Martin and executed by Renfro and Hester d/b/a R & C. Most of the evidence related to the performance of the work by R & C/R & H, that is, how much of the subcontract was actually completed and the reasonable value of this work. Martin urged that some of the work had not been done properly and actually caused additional expense to correct. Defendants sought and obtained fact findings that the contract was induced by fraudulent representations by Martin's employee that concrete could be purchased by R & C for $11.50 per yard although there was no testimony that Renfro had ever asked Martin or Alamo to purchase the concrete. The value of the extras performed by R & C on the Alice job was highly disputed in that no written demand in the amount alleged had been made by R & C prior to the trial. Twenty-seven issues were submitted to the jury and although some are evidentiary and some were found favorable to Martin, the defendants secured a favorable judgment that Martin take nothing and that the subcontractors recover on a quantum meruit for the labor and materials furnished on the Fair Park Shopping Center as well as the Alice job based on a favorable jury verdict. Therefore, we must conclude that selection and composition of the jury was crucial to all parties.

It is seen that Alamo/Martin faced an almost impossible task in the selection of the jury. Alamo/Martin were given six peremptory challenges to exercise from 42 jurors. On the other hand, defendants, although their interests were not antagonistic, were given a total of 24 peremptory challenges to exercise on these 42 jurors. This tremendous advantage is seen in that in the first 24 jurors, defendants exercised a total of fourteen peremptory challenges while Alamo/Martin were exercising three strikes. In this situation, we are compelled to the conclusion that such a jury selection

resulted in a trial which was materially unfair to Alamo/Martin.

This conclusion requires a reversal and remand of the judgment. Since appellants' other points, if sustained, would require a like result, we do not feel that anything would be gained by a discussion of these points.

The judgment is reversed, and the cause remanded to the trial court for a new trial.