D. G. COUNCIL et al., Appellants,

v.

BANKERS COMMERCIAL LIFE INS. CO. et al., Appellees.

No. 8001.

Court of Civil Appeals of Texas, Beaumont.

Oct. 13, 1977.

Rehearing Denied Nov. 10, 1977.

Bert D. Bader, Jack Pew, Jr., Dallas, for appellants.

R. Jack Ayres, Jr., Joe Burnett, Dallas, for appellees.

KEITH, Justice.

Defendants appeal from an adverse judgment rendered in a trial to a jury of a case involving alleged tortious interference with

contractual relationships between the plaintiff, Bankers Commercial Life Insurance Company, and one of its former employees, E. V. Scott.

## Part I

Scott, a former president of Bankers, embezzled in excess of $450,000 from Bankers and, according to our record, confessed to such fact and agreed to make restitution insofar as he was able. Scott, either individually or through a corporation which he controlled, Nationwide Interiors, Inc., owned an equity in a tract of land consisting of 115 acres of land in Kaufman County as well as an undivided one-tenth interest in a joint venture in other lands in the same county. According to Scott and his lawyer, as well as John Adnor—sole controlling stockholder of Bankers Insurance—Scott agreed to convey his holdings in the Kaufman County property to Bankers in partial restitution of his embezzlement. In addition, he agreed to cooperate with Adnor and Bankers in the prosecution of their claims against the defendants.

Plaintiff Bankers sued Scott and the other defendants claiming that the defendants, Nash (who was president of a bank in Kaufman which held certain notes executed by Scott) and Council, conspired to defeat Bankers' claim to the Kaufman County lands standing in the name of Scott or his corporate alter ego. In view of our disposition of the appeal, it is unnecessary to elaborate further upon the details of the claims or the testimony offered in support thereof.

Although Scott was cast in the role of a defendant in the pleadings, it is readily apparent from an examination of the lengthy record that he was a willing collaborator with Bankers in their joint effort to secure a judgment against the other defendants. Yet, he was called as an adverse witness by Bankers and its counsel was permitted—over timely and proper objections—to lead the witness in giving damaging testimony against the other defendants. Upon cross-examination it developed that anything he recovered, as a cross-plaintiff, would go to Bankers. This is an illustrative excerpt from the record:

"Q So anything that they [Bankers] recover from any assets that you have transferred to them goes to reduce that $457,000.00 theft that you took from them; is that right?

"A As far as I understand it, yes, sir.

"Q Anything you might recoup out of this case you wouldn't realize anything out of it? It would go to that company; is that what you are saying?

"A As far as I understand it, yes, sir."

We summarize the five adjudicatory paragraphs in the judgment as follows:

A. Bankers recovered judgment (1) against Nash, individually, for the sum of $52,363.61; (2) against Scott, Nash, and Council, jointly and severally, for actual damages in the sum of $24,000; and (3) against Nash and Council, jointly and severally, exemplary damages in the sum of $9,000.

B. Scott, as cross-plaintiff, recovered (1) judgment against Nash and Council for actual damages in the sum of $17,500 and (2) against the same two individuals as exemplary damages, the sum of $8,000.

Scott did not even file a motion for new trial and has made no complaint as to the judgment which Bankers recovered against him. Only Nash and Council have appealed, and they complain of the entire judgment.

Under the record, as it developed upon the trial, there was no conflict between Scott and Bankers and the only issues submitted to the jury as between those parties were based upon undisputed testimony and served as a predicate for liability issues against Nash and Council.* Thus, the case

developed precisely as predicted by defendants—there was no conflict between Bankers and Scott.

■ Our preliminary statement invokes the rationale of *Perkins v. Freeman,* 518 S.W.2d 532 (Tex.1974), and Tex.Rev.Civ. Stat.Ann. art. 2151a (Supp.1977), which requires the trial court, after alignment of the parties, to equalize the number of peremptory challenges. Defendants have shown, by formal bill of exception, that they made a timely objection to the failure to equalize the peremptory challenges. It is shown by a formal bill of exception:

"[B]efore the selection of the jury, defendants objected to the Court that plaintiff, Bankers Commercial Life Insurance Company, and E. V. Scott should not be permitted each to have six peremptory challenges to the jury panel, but should only be allowed a total of six peremptory challenges, and in support of such objection, urged to the Court that plaintiff and Scott were aligned together against defendants and made known to the Court that Scott had assigned all his assets to plaintiff prior to the trial, including his right of recovery in this action, and such objection was overruled by the Court, and the Court ruled that plaintiff and Scott each would be entitled to six peremptory challenges."

The complaint was brought forward into the amended motion for new trial [as assignments 154 and 155] and now forms the basis of defendants' point of error No. 49. The point is sustained.

■ The rule governing the granting of peremptory challenges is clearly stated in *Perkins v. Freeman,* supra:

"Whether such defendants are parties within the meaning of Rule 233, so as to entitle them to separate peremptory challenges, depends on whether their interests are, at least in part, *antagonistic in a matter that the jury is to be concerned with.*" (518 S.W.2d at 533, emphasis supplied)

Had Bankers sued only Scott, under our record it would have been entitled to a peremptory instruction since Scott admitted the factual basis of Bankers' suit. There was no issue for the jury's determination. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 755 (Tex.1970); *Texas Sling Company v. Emanuel,* 431 S.W.2d 538, 540 (Tex.1968). Bankers and Scott were not, in the language of *Perkins,* "antagonistic in a matter that the jury is to be concerned with."

But, plaintiff argues that defendants have not shown by the record that they "were forced to prematurely exhaust their peremptory challenges, nor does the record reflect in any manner how the Appellants [defendants] were injured by the jury selection process." Some courts have held that denial of jury strikes is subject to the harmless error rule. See, e. g., *Spiritas v. Robinowitz,* 544 S.W.2d 710, 720 (Tex.Civ.App.— Dallas 1976, writ ref'd n. r. e.), but a close examination of the opinion shows that the harmless error rule was invoked because of unusual procedural problems present in that case. See also *King v. Maldonado,* 552 S.W.2d 940 (Tex.Civ.App.—Corpus Christi 1977).

■ Under the undisputed record before us, plaintiff and Scott were aligned together; and a review of the lengthy record discloses that plaintiff's counsel used this cozy relationship to achieve an unfair advantage over the defendants. Following the rule enunciated in *Perkins v. Freeman,* quoted earlier, we hold that the action on the part of the trial court in awarding Bankers and Scott twice the number of peremptory challenges as were awarded to defendants was so materially unfair that defendants were denied a fair trial. This abuse of discretion requires a reversal of the judgment under the rationale of *Tamburello v. Welch,* 392 S.W.2d 114, 117 (Tex. 1965), which was followed in *Perkins v. Freeman,* supra.

Accordingly, we sustain defendants' Point No. 49 and reverse the judgment of the trial court and remand the cause for a new trial. *Lipshy v. Lipshy,* 525 S.W.2d 222, 226 (Tex.Civ.App.—Dallas 1975, writ dism'd).

Part II of this opinion relates to procedural matters which are of little consequence to the jurisprudence of this State; consequently, although it is an integral part of our opinion, we order it not published pursuant to the provisions of Tex.R.Civ.P. 452.

The error discussed requires a reversal of the judgment of the trial court and a remand of the cause. Our examination of the remaining assignments does not reveal any complaint which would require a rendition of the judgment, and the other points seeking a remand of the cause complain of matters which may not arise upon another trial. For the error herein mentioned, the judgment is reversed and the cause is remanded.

REVERSED and REMANDED.