Frank Jerome DUNN, Jr., Appellant,

v.

PATTERSON DENTAL CO. et al., Appellees.

No. 8614.

Court of Civil Appeals of Texas, Texarkana.

Jan. 30, 1979.

Rehearing Denied March 20, 1979.

Gayle E. Oler, Oler & Hoffman, Dallas, for appellant.

John H. Martin, Thompson, Knight, Simmons & Bullion, Dallas, for Fraser-Sweatman.

R. Chris Harvey, James K. Peden, III, Strasburger & Price, Dallas, for Patterson Dental.

C. Edward Fowler, Jr., Bailey, Williams, Westfall, Lee & Fowler, Dallas, for Puritan-Bennett & Medicall.

James S. Maxwell, Charles L. Perry, Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, for Western Enterprises.

CORNELIUS, Chief Justice.

■ This is a products liability case in which appellant, a dentist, sought damages for personal injuries he received when a piece of his office equipment exploded. The defendants, appellees here, were the seller of the equipment (Patterson Dental Company), the assembler (Frazier-Sweatmen Company), the manufacturer of a component part (Western Enterprises, Inc.), and the company which serviced the equipment and had recently changed the oxygen cylinders thereon (Medicall, Inc.). The jury found against appellant on the negligence and liability issues, and a take nothing judgment was entered. The only complaint on appeal is that the trial court erred in allowing the four appellees six peremptory jury challenges each, for a total of twenty-four, while appellant was allowed only six.

Tex.R.Civ.P. 233 provides that:

"Each party to a civil suit shall be entitled to six peremptory challenges in a case tried in the district court, and to three in the county court."

The term "each party" as used in the rule is not the same as "each person," but means each litigant or group of litigants whose interest is antagonistic to another litigant or group of litigants. *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965); *Retail Credit Company v. Hyman*, 316 S.W.2d 769 (Tex. Civ.App. Houston 1958, writ ref'd); *King v. Maldonado*, 552 S.W.2d 940 (Tex.Civ.App. Corpus Christi 1977, writ ref'd n. r. e.); 3 McDonald's, Texas Civil Practice, Sec. 11.-12.1, p. 163. The question of antagonism is to be determined by the information available at the time to the trial court revealed from an analysis of the pleadings, as well as from facts disclosed by pre-trial proceedings and which have been specifically called to the court's attention. *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.1974). The inquiry is whether there is antagonism as to fact issues on which the jury will pass. *Perkins v. Freeman*, supra; 3 McDonald's Texas Civil Practice, Sec. 11.12.2, p. 164.

Appellant alleged that each of the appellees, Frazier-Sweatman Company, Western Enterprises, Inc. and Patterson Dental Company, was negligent in the design, manufacture, assembly and/or sale of the product and the faulty component, and that Medicall, Inc. was negligent in servicing the equipment and in connecting certain oxygen cylinders thereto and in failing to adequately train its serviceman. Appellant also alleged breach of express and implied warranties and relied upon the doctrine of strict liability. All of the appellees denied liability and in addition sought to place the blame for the accident on one or more of the other appellees. Each of them cross-claimed against the others seeking indemnity and/or contribution based upon alleged specific acts of negligence, except that neither Western nor Frazier-Sweatman sought any relief against the seller, Patterson Dental Company. Appellant's counsel conceded that, on the basis of the pleadings alone, all of the appellees were antagonistic and he made no request to restrict their peremptory challenges until after voir dire of the jury panel. At that time he moved the court to allow all the appellees a total of only six strikes. The motion was based upon certain statements he contended had been made by the appellees' attorneys in voir dire to the effect that none of them accused any other appellee of wrongdoing, thus negating any antagonism among them. The trial court denied the motion. Appellant here urges that, on the basis of the statements he attributes to appellees' counsel, the trial court should have held that the appellees were not antagonistic and restricted their peremptory challenges to six.

■ The problem with appellant's argument is that he has not brought forward a statement of facts, except a partial one showing his motion, and we are unable to determine the nature and import of what, if anything, the counsel for appellees said with reference to their positions regarding fault. The appellees deny that they made any statements on voir dire which had the effect attributed to them by the appellant. When only a partial statement of facts has been presented, we must presume there was sufficient evidence before the trial court to sustain its action. *Englander Co., Inc. v. Kennedy*, 428 S.W.2d 806 (Tex.1968); *Blancas v. Blancas*, 495 S.W.2d 597 (Tex.Civ. App. Texarkana 1973, no writ). The trial judge here may well have concluded that the statements were not made, or that if made, the context in which they were made militated against the effect which it is claimed they had. As antagonism is shown by the pleadings, and we have no record of any concessions made which would change that, we cannot say the court was wrong in concluding that at least some antagonism existed among the appellees.

■ Appellant also contends that the court erred in failing to follow the provisions of Tex.Rev.Civ.Stat.Ann. art. 2151a (Supp.1978) which modified Rule 233 and requires the court to equalize the peremptory challenges allowed under that rule. Article 2151a provides:

"After proper alignment of parties, it shall be the duty of the court to equalize the number of peremptory challenges provided under Rule 233, Texas Rules of Civil Procedure, Annotated, in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party."

There is considerable disagreement as to the meaning of Article 2151a and its effect on Rule 233, but we interpret the statute as requiring the trial court to equalize the number of challenges between the plaintiff's side and the defendant's side after the necessary alignment has been made to identify those sides. For example, if there are multiple defendants who are antagonistic, each is entitled to a complement of challenges, but the plaintiff is entitled to a number equalling the total allowed the defendants. Construing the statute in that manner is the only way to give effect to its plain language and to render its enactment meaningful.

Before the enactment of Article 2151a, Texas followed the "single issue" rule with regard to the number of challenges allowed multiple parties aligned on the same side of a lawsuit. According to that rule, the presence of a single issue which was not common to persons on the same side of the suit entitled each person to his own set of challenges. The operation of this rule resulted in cases of unfairness, because multiple parties with a common interest in defeating a solitary opponent could multiply their challenges by assuming inconsistent positions on a single issue. This, together with the undisputed right of the multiple parties to collaborate in the use of their challenges, resulted in a windfall which gave the multiple parties a distinct advantage against their common adversary. This advantage prompted a move to enact a statute or court rule which would require, after proper alignment of parties, the equalization of peremptory challenges between sides. See Jones, *Peremptory Challenges-Should Rule 233 Be Changed?*, 45 Tex.L.Rev. 80 (1966). Article 2151a was enacted in 1971.

It has been argued that Article 2151a only requires equal challenges for each *party,* rather than for each *side.* But that was the requirement under Rule 233 and previous case law. If that is still to be the case, why was the statute enacted? The reason for the statute must have been to provide for a corresponding increase in a party's challenges so as to equalize them with those of antagonistic multiple parties aligned against him in order to avoid disadvantage to the single party. This interpretation is confirmed, we believe, by that portion of the statute which states that the challenges must be equalized "in accordance with the ends of justice so that *no party* is given an unequal advantage because of the number of peremptory challenges allowed *that party.*" (Emphasis supplied.) If each party is always to be allowed only six challenges, what is the purpose of the quoted language? It seems obvious that the intent of the statute is to provide for an increase in one party's challenges to offset the combined challenges of multiple parties aligned against him. Whatever we think of the wisdom of the Legislature in enacting Article 2151a, we are bound to give effect to its intention if it can be ascertained. The cardinal rule of statutory construction is that statutes are to be construed, if possible, to give them meaning and effect, not to render them meaningless and useless. The appellees suggest that Article 2151a was enacted only to codify the pre-existing common law rule and make it mandatory, and also to give the trial court the power to align the parties according to their true interests. The answer to that suggestion is that Rule 233 had already made the common law rule mandatory, and the trial court was already possessed of power, prior to the adoption of Article 2151a, to align the parties according to their true interests.

Some contend that the statute was designed to give the trial court the discretion, in multiple party cases, to increase or reduce the challenges on either side in order to do substantial justice, even though the number of challenges per side is not equal. At least three cases by our Courts of Civil Appeals have so construed the statute.

*King v. Maldonado*, supra; *Dean v. Texas Bitulithic Co.*, 538 S.W.2d 825 (Tex.Civ.App. Waco 1976, no writ); *Austin Road Company v. Evans*, 499 S.W.2d 194 (Tex.Civ.App. Fort Worth 1973, writ ref'd n. r. e.). But if that was the purpose of the statute, it seems that it would have required the court to "proportionalize"[1] or "adjust" the challenges. Instead, it required the court, after alignment, to *equalize* the challenges. The persuasive article of Professor Jones,[2] which some have credited with leading to the enactment of Article 2151a, consistently and cogently argues for *equal, not proportional*, challenges. Moreover, our statutes governing the trial of criminal cases specifically require equal challenges in multiple party cases,[3] as do the statutes or court decisions in the federal system and in the states of Florida, Illinois, Massachusetts and South Dakota. Annot., 32 A.L.R.3d 747, 790; Jones, *Ibid.*, pp. 89–92. There is no valid reason why the same rule should not apply to civil cases in our State, particularly when it appears that Article 2151a was enacted for that very purpose and its clear language requires it. Those who argue for the "proportionalized" approach to Article 2151a ignore the problem that the statute was drafted to cure. Their interpretation would permit the single issue rule to continue unchecked as a part of our procedure, thereby permitting multiple parties to stack their peremptory challenges while leaving the single party no remedy except the uncertain and sometimes inconsistent exercise of the trial judge's discretion. Our Supreme Court has already expressed the view that the question of the allocation of peremptory challenges should not be left to the uncontrolled discretion of the trial court. See *Tamburello v. Welch*, supra, at 117. Our approach to Article 2151a, however, would not divest the trial court of its discretion. It would still have broad discretion to decide whether and how many additional challenges to allow multiple parties, and it is only then that those allowed the opposite side must be increased to an equal number.

Appellees argue that the phrase "in the interest of justice" contained in Article 2151a indicates that the Legislature intended to give the trial court the discretion to allot the challenges in order to make the sides "substantially equal in strength", but not to require true equality in the number of challenges. In our judgment this phrase does not mean the trial court has uncontrolled discretion to do what it believes to be justice. Rather, the statute very plainly says that, to do justice, *the challenges shall be equalized*.

Finally, it is urged that, if Article 2151a is given the interpretation we propose, the number of peremptory challenges required could get out of hand in complicated cases, and could operate to the harm of multiple parties who are greatly antagonistic. Although these considerations are legitimate matters of concern, we do not believe they are of sufficient gravity to cause justifiable alarm. Lawsuits with large numbers of antagonistic parties are not so common as to make the application of the statute an undue burden upon the jury system. And when the multiple parties are greatly an-

1. See Chief Justice Massey's comments in *Austin Road Company v. Evans*, supra.

2. Jones, *Peremptory Challenges-Should Rule 233 Be Changed?*, 45 Tex.L.Rev. 80 (1966).

3. Tex.Code Crim.Proc.Ann. art. 35.15:
   "(a) In capital cases both the State and defendant shall be entitled to fifteen peremptory challenges. Where two or more defendants are tried together, the State shall be entitled to *eight peremptory challenges for each defendant; and each defendant shall be entitled to eight peremptory challenges.*
   "(b) In non-capital felony cases and in capital cases where the State has made known to the court that it will not seek the death penalty, the State and defendant shall each be entitled to ten peremptory challenges. If two or more defendants are tried together *each defendant shall be entitled to six* peremptory challenges and the *State to six for each defendant.*
   "(c) The State and the defendant shall each be entitled to five peremptory challenges in a misdemeanor tried in the district court and to three in the county court, or county court at law. If two or more defendants are tried together, *each defendant shall be entitled to three* such challenges and *the State to three for each defendant in either court.*" (Emphasis supplied.)

tagonistic and there is an absence of any substantial common issue, severance, not alignment, is the answer. See Jones, *Ibid.*

■ We respectfully disagree with the decisions to contrary, and hold that when the court allows a total of more than six peremptory challenges to multiple parties aligned on the same side, the opposite side must be allowed an equal number. Thus, even though the court here may have been correct in allowing the appellees separate sets of challenges, he should have increased appellant's to an equal number.

■ Appellant's motion did not mention Article 2151a, nor did he expressly request an increase in his challenges, as distinguished from a reduction of those allowed the appellees. Nevertheless, Article 2151a imposed the duty upon the trial court to equalize the challenges in such a situation, and we believe appellant's motion was sufficient to call the court's attention to the need to do so. See Tex.R.Civ.P. 373. The courts of Texas are presumed to know the statutes of this State and the purposes for which they were enacted. It is not necessary to offer them in evidence or refer to them during the trial, and any reference to them by counsel can only be considered as an effort to assist the court in its rulings. 1 McCormick & Ray, Texas Law of Evidence, Sec. 171 (2d ed. 1956).

Appellees strenuously argue that the court's failure to follow the mandate of Article 2151a, if error, was harmless. We think the Supreme Court's opinion in *Tamburello v. Welch*, a case where the defendants were denied the challenges to which they were entitled, is the complete answer to the contention. There the court said:

"The harmless error rule undoubtedly applies where a party is denied the number of peremptory challenges to which he is entitled. *As a practical matter, however, the appellant will usually be unable to show that an improper judgment probably resulted from an error of this nature.* In that respect the case is somewhat similar to *Heflin v. Wilson*, Tex.Civ.App., 297 S.W.2d 864 (writ ref.), where the members of the jury panel had been selected by the jury-commission method rather than by use of the jury wheel. After holding that the appellant's motion to quash the panel should have been sustained, the court said:

'It would be impossible for appellant to demonstrate with any degree of certainty that he in fact suffered injury as a result of the manner in which the jury panel was selected, and he has made no effort to show specific harm or injury, but *we think that harm* within contemplation of the so-called harmless-error rule and Rule 434, T.R.C.P., *must be presumed* in the circumstances, . . .'

. . . . .

"If defendants must establish that the error in denying them additional challenges probably caused the rendition of an improper judgment, the matter of peremptory challenges will rest almost entirely in the uncontrolled discretion of the trial judge.

. . . . .

"In *Texas Employers' Ins. Ass'n v. McCaslin*, 159 Tex. 273, 317 S.W.2d 916, we observed that an action or occurrence may be so highly prejudiced and inimical to the fairness of a trial that the burden of going forward with proof is met, prima facie at least, by simply showing the improper act and nothing more. It was also pointed out that *the burden of the complaining party is met by showing that the trial which resulted in a judgment against him was materially unfair. . . .* " (Emphasis supplied.)

To illustrate what the Supreme Court thought of its holding in *Tamburello*, it said seven years later in *Rivas v. Liberty Mutual Insurance Company*, 480 S.W.2d 610 (Tex. 1972):

"*Tamburello* involved the denial of the proper number of peremptory challenges. The court . . . held the error amounted to a violation of the fundamental right of trial by jury, and the errors . . . raised an inference of probable harm."

The case before us is a perfect example of the dilemma faced by the complaining party in a situation such as that discussed in *Tamburello v. Welch*, supra. Unfairness with respect to the number of peremptory challenges consists not only in the fact that a party may exhaust all of his challenges and need more, but it also consists, in a case such as the one before us, in the fact that the party's adversaries, by reason of their superior number of challenges and their right to collaborate in the use of those challenges, are given an unfair advantage in influencing the composition of the jury. The only way the single party can overcome or minimize that advantage is to be given an equal voice in the selection of the jurors. It is no answer to his problem to say that he did not use all of the challenges he had, or that he cannot show that he was forced to accept an undesirable juror. The fact remains that the trial was rendered materially unfair to him because of the advantage given to his adversaries to influence the composition of the jury.

Because of the failure to follow the mandates of Article 2151a, the trial was rendered materially unfair to appellant. *Tamburello v. Welch*, supra; *Perkins v. Freeman*, supra.

The contention that appellant waived the error because he failed to complain of the court's action in his amended motion for new trial is overruled. The action of the court was assigned as error in both the original and the amended motions for new trial.

The judgment is reversed and the cause remanded for a new trial.