**PATTERSON DENTAL COMPANY et al., Petitioners,**

v.

**Frank Jerome DUNN, Jr., Respondent.**

**No. B–8436.**

Supreme Court of Texas.

Dec. 19, 1979.

Rehearing Denied Jan. 16, 1980.

Thompson & Knight, John H. Martin, Strasburger & Price, James K. Peden, III, and R. Chris Harvey, Seay, Gwinn, Crawford, Mebus & Blakeney, James S. Maxwell and Charles L. Perry, Bailey, Williams,

Westfall, Lee & Fowler, C. Edward Fowler, Jr., and Stephen G. Koerner, Dallas, for petitioners.

Oler & Hoffman, Gayle E. Oler, Dallas, for respondent.

SPEARS, Justice.

This case involves the "equalizing" by the trial court of peremptory challenges between multiple parties in a civil suit as required by Tex.Rev.Civ.Stat.Ann. art. 2151a (Vernon Supp.1978–79).[1] Plaintiff-respondent Dunn, a dentist, sued four defendants on negligence and products liability theories for personal injuries received when a piece of equipment he was operating in his dental office exploded. The fire and explosion resulted when Dunn opened the valve of an oxygen cylinder which was connected to a two-cylinder manifold system. After trial to a jury, a take-nothing judgment was rendered against Dunn. The court of civil appeals reversed and remanded the cause for a new trial. 578 S.W.2d 428. We affirm the judgment of the court of civil appeals but on different grounds.

Respondent Dunn sued Patterson Dental Company, the retail vendor of the manifold system; Fraser-Sweatman, Inc., the designer and manufacturer of the system; Western Enterprises, Inc., the manufacturer of certain component parts of the system; and Puritan-Bennett Corp. (Medicall, Inc.), the company that serviced the system. All four defendants were united in denying that there was any defective product or negligence causing the incident and in contending that the plaintiff was guilty of "misuse," but each sought indemnity and/or contribution from other defendants if there were blame placed on that defendant for the explosion. Each also alleged that another defendant's actions were the sole cause of the accident.

The trial court called a panel of forty-six jurors. The court allowed each of the defendants six peremptory challenges, a total of twenty-four, but allowed plaintiff Dunn only six. Dunn objected and moved that all defendants collectively receive only six, the same number he was allowed. The trial court denied this motion. After the evidence was presented, forty-four special issues were submitted to the jury. By a ten to two verdict, the issues were answered against plaintiff Dunn and for exoneration of the four defendants. The court of civil appeals held that under article 2151a which requires equalizing the peremptory challenges plaintiff Dunn should receive twenty-four peremptory challenges. We believe the court of civil appeals has misinterpreted the statute.

The practice of allowing peremptory challenges by parties to a civil suit was unknown to the common law. The practice in Texas began as a creature of statute and is now permitted by the Texas Rules of Civil Procedure. Rule 233 provides: "Each party to a civil suit shall be entitled to six peremptory challenges in a case tried in the district court, and to three in the county court." A peremptory challenge, commonly referred to as a "strike," is defined by rule 232 as one "made to a juror without assigning any reason therefor." These rules are derived without change from their predecessor statutes, articles 2147 and 2148, and have controlled civil trials for more than one hundred years.

The term "party" in rule 233 is not synonymous with "litigant" or "person." Rather, "party" refers to a litigant or a group of litigants having essentially common interests. *Perkins v. Freeman*, 518 S.W.2d 532, 533 (Tex.1974). Though their interests need not be completely identical, litigants on the same side of the docket are deemed to be a "party" under the rule when their interests are not antagonistic in a matter in which the jury is to be concerned. *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 744 (Tex.1973).

---

1. For an analysis of the effect of article 2151a and a discussion of the various considerations involved in allocating peremptory challenges under this statute, *see* Sheehan & Hollingsworth, *Allocation of Peremptory Challenges Among Multiple Parties*, 10 St. Mary's L.J. 511 (1979).

Until article 2151a was enacted in 1971, Texas courts had engrafted into rule 233 the "single issue" test for determining the number of strikes to be allowed multiple parties aligned on the same side of a lawsuit. Under that test the presence of a solitary issue which was not common to all parties on the same side entitled each party on that side to a full set of six strikes. In other words, the community of interest of the parties on the same side must be complete before separate sets of strikes would be disallowed. Once antagonism on a single issue was found, each party received a full complement of six strikes. Application of the rule resulted in justifiable criticism of unfair results when multiple parties, each with a full set of strikes, collaborated in exercising those strikes in aid of their primary, common interest of defeating a common opponent on the other side. *See* Jones, *Peremptory Challenges—Should Rule 233 Be Changed?*, 45 Tex.L.Rev. 80, 84 (1966).

The unfairness created by the single-issue rule was undoubtedly the reason article 2151a was enacted by the legislature in 1971. Intended to relax the rigidity engrafted into rule 233, the statute provides:

> After proper alignment of parties, it shall be the duty of the court to equalize the number of peremptory challenges provided under Rule 233, Texas Rules of Civil Procedure, Annotated, in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party.

The court of civil appeals here has interpreted the statute as requiring numerical equality of the number of strikes allowed each side. Petitioners argue that the holding conflicts with prior decisions of other courts of civil appeals. *King v. Maldonado*, 552 S.W.2d 940 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Dean v. Texas Bitulithic Co.*, 538 S.W.2d 825 (Tex. Civ.App.—Waco 1976, no writ); *Austin Road Co. v. Evans*, 499 S.W.2d 194 (Tex.Civ. App.—Fort Worth 1973, writ ref'd n. r. e.). In those cases, an adjusting or proportionalizing of the strikes given to antagonistic parties on the same side was allowed by the trial court and upheld on appeal. We must determine what effect article 2151a has on the provisions of rule 233.

■ The threshold question to be answered in allocating strikes when multiple litigants are involved on one side of a lawsuit is whether any of those litigants on the same side are antagonistic with respect to a question that the jury will decide. Where no antagonism exists, each side must receive the same number of strikes. *See Perkins v. Freeman, supra*; *Council v. Bankers Commercial Life Ins. Co.*, 558 S.W.2d 487, 489 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.); *Lipshy v. Lipshy*, 525 S.W.2d 222, 224 (Tex.Civ.App.—Dallas 1975, writ dism'd); *Roy L. Martin & Assocs. v. Renfro*, 483 S.W.2d 845, 849 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Retail Credit Co. v. Hyman*, 316 S.W.2d 769, 771 (Tex.Civ.App.—Houston 1968, writ ref'd). When antagonistic parties on the same side are required to share six strikes, it is error amounting to a violation of the basic right to trial by jury. *See Rivas v. Liberty Mut. Ins. Co.*, 480 S.W.2d 610, 612 (Tex.1972); *Tamburello v. Welch*, 392 S.W.2d 114, 117 (Tex.1965). The antagonism must exist on an issue of fact that will be submitted to the jury, not on a matter that constitutes a pure question of law. Further, the antagonism must exist between litigants on the same side, vis-a-vis each other. Antagonism does not exist because of differing conflicts with the other side; e. g., when a plaintiff sues several defendants alleging different acts or omissions against each defendant. Antagonism would exist, however, if each of the defendants alleged that the fault of another defendant was the sole cause of plaintiff's damage. *Shell Chem. Co. v. Lamb, supra*; *Tamburello v. Welch, supra*. The existence or non-existence of cross-actions or third-party actions is not determinative. *Retail Credit Co. v. Hyman, supra*; *see Tamburello v. Welch, supra* (no cross-action, but antagonism existed); *Turner v. Turner*, 385 S.W.2d 230, 238 (Tex. 1964) (cross-action filed but no antagonism on fact issue).

The existence of antagonism must be determined prior to the exercise of the strikes by the parties. The trial court must consider the pleadings, information disclosed by pretrial discovery, and other information brought to the attention of the trial court. *Perkins v. Freeman, supra,* at 534. Information and representations made during *voir dire* of the jury panel also may be considered. Each case should be considered under the relevant circumstances. The existence of antagonism is not a matter within the trial court's discretion; it is a question of law whether any of the litigants aligned on the same side of the docket are antagonistic with respect to any issue to be submitted to the jury. *See generally* Sheehan & Hollingsworth, *Allocation of Peremptory Challenges Among Multiple Parties,* 10 St. Mary's L.J. 511, 512–523 (1979).

Here, Dunn seeks to uphold the result of the court of civil appeals' holding by arguing that no antagonism existed between the four defendants. The pleadings, however, clearly reflect that the defendants each blamed the others for the explosion of the equipment and pleaded that specific acts and omissions of others were the sole cause of plaintiff's injuries. Moreover, special issues were submitted to the jury on which defendants took opposite positions. Therefore, both the trial court and the court of civil appeals correctly concluded that there was antagonism between the defendants that entitled them to additional strikes. *Tamburello v. Welch, supra.*

Once the parties have been aligned on "sides," and it is determined that antagonism exists between parties on the same side, the provisions of article 2151a require the trial court to "equalize the number of peremptory challenges provided under Rule 233 . . . ." This task is to be done "in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party." Thus, article 2151a, while not involving the trial court's discretion in the determination of antagonism, does grant discretionary power to the trial court in allocating strikes.

In ascertaining whether the legislature intended that each side in a suit have an equal number of strikes after alignment, we consider the old law, the evil, and the remedy. Tex.Rev.Civ.Stat.Ann. art. 10, § 6 (Vernon 1969). The application of the "single issue" rule made it possible for one side in a lawsuit, consisting of several parties each with six strikes, in effect to dictate who was on the jury. *See* Jones, *supra,* at 87; Sheehan & Hollingsworth, *supra,* at 519. Presumably, this unfairness was the evil the legislature addressed when it enacted article 2151a in 1971.

The purpose of allowing strikes is not to allow a party to *select* a jury; instead, strikes are intended to permit a party to *reject* certain jurors based upon a subjective perception that those particular jurors might be unsympathetic to his position. When the number of strikes allowed to one side of the suit is grossly disproportionate to the number allowed the other side, it permits the side with the greater number to actually construct the jury. On the other hand, if the remedy provided in article 2151a was to grant each side an exactly equal number of strikes, a different evil would be substituted: the number of strikes would be unbalanced in favor of the side with a single litigant, for the antagonistic parties on the other side would have received no strikes to compensate for their antagonism between each other. *See* Sheehan & Hollingsworth, *supra,* at 529–30. The statute requires that the court equalize strikes between the *parties,* not the *sides,* of the suit. It provides that "[a]fter proper alignment of *parties* [strikes will be equalized] in accordance with the ends of justice so that no *party* is given an unequal advantage because of the number of peremptory challenges allowed that *party.*" (emphasis added). The court of civil appeals incorrectly interpreted the word "party" as synonymous with "side." Moreover, had the legislature intended that each side receive the same number of strikes, it could easily have said so. *See King v. Maldonado, supra,* at 944. Additionally, under such a construction, the last half of the statute,

which speaks of the "ends of justice" and "unequal advantage," would have been superfluous. We presume the language was placed in the statute for a purpose.

■ We conclude that exact numerical equality between sides was not the purpose of article 2151a. Rather, the intention of the legislature was to place a duty on the trial court to equalize the positions of the parties to prevent one side, antagonistic among the parties on certain matters of fact with which the jury would be concerned but primarily united in their opposition to the other side, from selecting the jury.

■ Proportionalizing the strikes may be accomplished by increasing the number allotted a sole party on one side, by decreasing the number allotted the multiple parties on the other side, or by both. *King v. Maldonado, supra* (plaintiff allowed six; two groups of defendants allowed four each and allowed to collaborate); *Dean v. Texas Bitulithic Co., supra* (plaintiff allowed six; two defendants allowed nine); *Austin Road Co. v. Evans, supra* (three plaintiffs allowed six each; principal defendant allowed nine). The extent to which equalizing is allowed depends upon the circumstances of the particular case, the information available to the trial court, the extent and degree of the antagonism, whether the parties collaborate in selecting jurors to be struck, the number of jurors available on the panel, and such other considerations as meet the statutory criteria of promoting the "ends of justice" and preventing "unequal advantage." The process of equalizing the strikes is not without limits, however, and is not subject to the unlimited discretion of the trial judge. Although article 2151a was intended to add an element of flexibility in awarding strikes among multiple parties and the trial court has discretionary power in determining the number of strikes awarded, in most cases a two-to-one ratio between sides would approach the maximum disparity allowable. In cases in which the disparity between strikes allowed the two sides did not exceed a two-to-one ratio, courts have held that there was no abuse of discretion. *See Longoria v. Atlantic Gulf Enterprises,* 572 S.W.2d 71, 80 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *King v. Maldonado, supra* ; *Dean v. Texas Bitulithic Co., supra* ; *Austin Road Co. v. Evans, supra.* On the other hand, a disparity of four-to-one between sides has been held erroneous. *See Roy L. Martin & Assocs. v. Renfro, supra,* 483 S.W.2d at 851.

■ In the case before us, we hold that the four-to-one disparity of strikes allowed was erroneous. Forty-six jurors were called, three of whom were excused for cause, leaving forty-three on the panel. The jury was selected from the first thirty-three jurors; that is, the twelfth juror selected was No. 33 on the panel. Plaintiff Dunn struck six of the thirty-three jurors while the four defendants struck at least fifteen, none of which had been struck by Dunn. Thus, the defendants, with twenty-four strikes, were able to exercise fifteen of them on the thirty-three member panel from which the jury was selected, effectively allowing the defendants *to select* the jury which would try their case. Irrespective of how they were exercised by the four defendants, the disparity of a four-to-one ratio of strikes between the two sides to the lawsuit was erroneous. The trial court had a duty to equalize the strikes in accordance with the language of article 2151a so that no party retained an unequal advantage, or, as in this case, an unequal disadvantage to Dunn.

Having determined that the trial court committed error in allocating the strikes, we must determine if the error resulted in a trial that was materially unfair, thus requiring reversal. *Tamburello v. Welch, supra.* In *Tamburello,* we held that the trial court committed reversible error in requiring two antagonistic defendants to share six strikes as against plaintiff's six strikes. After stating that the harmless error rule [2] was applicable, we pointed out the difficulty of showing that an improper judgment probably resulted from an error of this na-

2. *See* Tex.R.Civ.P. 434 and 503.

ture. Peremptory challenges are subjective in application, are prompted by intuition, and are in spontaneous reaction to a juror's background, appearance, personality, prior contacts, and perceived attitude. *See* 3 R. McDonald, Texas Civil Practice § 11.12.1, at 162 (rev. 1970). We wrote in *Tamburello*, "The decision to strike is, in the last analysis, a matter of personal judgment usually based in large measure upon intangibles not susceptible of precise description and which cannot be fairly appraised by a trial or appellate court." We relaxed the requirement of the traditional "harmless error" rule by establishing the burden on the complaining party to show that "the trial which resulted against him was *materially unfair*" and held that the denial of strikes to each defendant, without any further showing, resulted in a trial that was so materially unfair that the judgment must be reversed.

In *Perkins v. Freeman, supra*, a child custody case, the plaintiff-mother was given six strikes, the defendant-father was given six, and the intervenors, paternal grandparents, were given six. Because the pleadings demonstrated that no antagonism existed between the father and his parents, we reversed and remanded, holding that their twelve strikes gave them "an unequal advantage, [that] was so materially unfair that the judgment cannot be upheld." *Id.* at 534. No further showing of harm was made or discussed.

■■■ Normally, the question whether the trial was materially unfair in either the determination of antagonism or the equalizing of strikes requires that the entire record, including the statement of facts, be examined by the appellate court. *See Retail Credit Co. v. Hyman, supra*. The presence of error in either instance is to be viewed from the perspective of the trial judge as of the time he makes his determination. Whether any such error resulted in a materially unfair trial, however, must be decided from an examination of the entire trial record. For example, in a case in which the complaining party failed to prove his cause of action or defense, an error in allocating or equalizing strikes could not be said to have resulted in a materially unfair trial. On the other hand, when the trial is contested and the evidence is sharply conflicting, the error results in a materially unfair trial without showing more. *Perkins v. Freeman, supra*; *Tamburello v. Welch, supra*; *Roy L. Martin & Assocs. v. Renfro, supra*.

■■■ Here, we have no statement of facts of the testimony at the trial or of the *voir dire* examination of the jury panel. It is abundantly clear, however, from the number of special issues submitted, the ten-to-two verdict, and the absence of any motion for summary judgment or motion for instructed verdict in the record before us, that the trial was hotly contested. In these circumstances we hold that in the absence of a statement of facts that demonstrates that the non-complaining party would otherwise have been entitled to a judgment or that the case was not seriously disputed on its facts, a disparity of strikes between sides of as much as four-to-one results in a materially unfair trial as a matter of law. *See Texas Employers' Ins. Ass'n v. McCaslin*, 159 Tex. 273, 317 S.W.2d 916, 921 (1958).

■■■ The petitioners contend that Dunn did not properly preserve any error because he only objected to the trial court's action in refusing to limit the defendants collectively to six strikes, the number Dunn was allowed. We disagree. Rule 373 requires that a complaining party, "at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of court and his grounds therefor; . . . ." Dunn's timely objection was essentially that the defendants received more strikes than he did, and he repeated his complaint in his motion for new trial and his amended motion for new trial, citing the specific provisions of art. 2151a. We hold that his objection was sufficient to direct the court's attention to the unequal distribution of the peremptory challenges allowed the sides and the statutory duty to equalize.

The judgment of the court of civil appeals is affirmed.

GREENHILL, C. J., dissents with opinion.

GARWOOD, J., not sitting.

GREENHILL, Chief Justice, dissenting.

The court's opinion reverts to the doctrine of presumed harm and unassigned error. It states, toward the end, that the exercise of the strikes by the defendants "resulted in a trial that was materially unfair as a matter of law."

This statement is made in spite of the fact that the plaintiff did not request the trial court to equalize the strikes or to direct the defendants not to collaborate on the exercise of their strikes.

Instead, the plaintiff's position at trial was that all four defendants were entitled to a total of only six strikes. The trial court overruled this motion. As I understand this court's opinion, it agrees with that ruling of the trial court. At trial, plaintiff made no other request or motion. It was all, or nothing at all. The plaintiff's motion was not to limit the strikes by equalizing the defendants' strikes, but was to limit all defendants to six strikes. That was and is his point. The court has, in my opinion, created a different point for him and sustained it.

Further, the court's opinion presumes harm. In this case, there is no statement of facts before the court to show the existence of harm. In those similar cases previously before this court, there has been a statement of facts indicating the existence of harm. *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.1974); *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965). Moreover, this court "refused" the application for writ of error in *Retail Credit Co. v. Hyman*, 316 S.W.2d 769 (Tex.Civ.App.—Houston 1958) and thus approved the holding and opinion that a judgment in such a case would not be reversed in the absence of a statement of facts. 316 S.W.2d at 772.